[Civ. No. 3343. Third Appellate District.—November 30, 1927.]

KARL W. MESSNER, Petitioner, v. BOARD OF DENTAL EXAMINERS OF CALIFORNIA et al., Respondents.

200

Schweitzer & Hutton for Petitioner.

Frank J. Burke and Jesse W. Carter for Respondents.

FINCH, P. J.—This is an original application for a writ of review by which petitioner seeks to have annulled an order of respondent Board, hereinafter referred to as respondent, suspending his license to practice dentistry for a period of ten years.

The accusation upon which he was tried alleges that on or about March 25, 1927, he "did wilfully and unlawfully aid and abet an unlicensed person, to-wit: W. M. Cohn, to practice dentistry, . . . in that the said Karl W. Messner did then and there practice dentistry in an office managed and conducted by the said W. M. Cohn; that the said Karl W. Messner at this said time well knew that the said office was a place where dental operations were performed and . . . that the said W. M. Cohn was the manager thereof and that the said W. M. Cohn was participating in the profits with Ralph Mitchell and others as the proprietor thereof."

One of respondent's inspectors testified that on March 26, 1927, he visited the office "conducted by Dr. Ralph Mitchell and known as 'Dr. Mitchell and Associated Dentists,' at 706 South Broadway in the city of Los Angeles"; that a woman at the information desk informed him that Cohn was manager, but that both Mitchell and Cohn were then absent, and referred him to a woman at another desk, Miss Olson; that Miss Olson' also informed him that Cohn was manager and made out and gave the witness a written list of the employees, in which she inserted "Mr. W. M. Cohn, Manager" and "Dr. Ralph Mitchell, Employer"; that he did not suggest to Miss Olson that she enter Cohn's name as manager, but "told her to put it exactly as the record showed, the time card." The witness was cross-examined by the accused, who was not represented by counsel, as follows: "Q. Do you remember when I called you up about the paper? A. I don't remember who it was; somebody called me up . . . and said it was Dr. Mitchell's office and said that the girl had no authority to sign that, that Cohn was not the manager and to return the paper."

Miss Olson, as a witness for the prosecution, testified that she was cashier of the office, and that at the time alleged in the accusation Cohn was bookkeeper, "superintendent of lab and to prepare the advertising"; that his duty as superintendent of the laboratory was "to see that the work went out on time"; that "all that he did was to attend to the advertising and to keep the books and . . . superintend the laboratory"; that he sometimes signed checks; that "he received dividends"; that Dr. Mitchell signed the dividend checks; that Cohn "was interested the same as the rest of the doctors"; that he purchased supplies for the office; that the receipts of the office were deposited in the bank in the name of "Dr. Ralph Mitchell, trustee"; that she never believed that Cohn was manager, but that Dr. Mitchell was manager"; that she inserted Cohn's name as manager because the inspector told her to do so; that she wanted to put him down as advertising manager and he (the inspector) said 'No, that covers everything, and so put him down as manager,' instead of writing it all out it covered that"; that Cohn "had money in the trust the same as the rest of them."

A licensed dentist, who was employed in the office at the time alleged in the accusation, was a witness for the prosecution, and he testified that Cohn "evidently took care of the books and the advertising and took care of the cash register and totaled it up at night and took care of the money; just general duties like that. . . . He would arrange credit for patients and if they gave notes in payment for their work he evidently took care of them and saw that those notes were paid when they became due. . . . I don't know of him ever discharging anybody, but one nurse that worked for me I know he hired her. . . . Q. From the observation that you had of the work that was being done and the duties performed by Mr. Cohn in that office, what was your impression as to his connection with the office? A. I thought that he must be the manager. Q. Did you participate in the profits of that office or that trust agreement? A. I did. Q. Do you know whether Mr. Cohn participated in it or not? A. I think he did, yes. Q. Do you know whether or not Mr. Cohn signed that trust agreement? A. I am pretty positive that he did, yes, sir. . . . Q. By whom was that (profit) paid to you? A. Mr. Cohn."

The accused, who appeared without counsel, testified: "I was never led to believe that Mr. Cohn was manager. I was led to believe that Dr. Mitchell was the sole owner and trustee of that office. Now, that trust agreement, I didn't sign the first trust agreement, and the second I signed. . . . I did not think I was breaking the law in any way, manner or form." He further testified that it was his duty to diagnose cases and fix prices"; that Cohn did not "at any time ever fix on the amount of money that was to be charged for the work"; that his "name was on a lot of my checks. They were Dr. Ralph Mitchell, signed by W. M. Cohn"; that "the conduct of the office was absolutely in Dr. Mitchell's hands; it was entirely under him"; that Cohn "would buy office supplies and dental supplies"; that Dr. Mitchell would tell Cohn "what quantity of supplies were needed. . . . I am only presuming that." While the witnesses referred to a first trust agreement and a second trust agreement, neither was offered in evidence, nor was any attempt made to prove any of the terms of either except that it appears inferentially that the agreements provided for a division of profits in which Cohn was to and did share, the basis of distribution not being shown.

It is reasonably inferable from the evidence that Cohn was credit and advertising manager, that he superintended the laboratory to the extent of seeing "that the work went out on time"; that he purchased dental and office supplies, though it does not appear that he determined the grade or character of supplies to be ordered; and that he participated in the profits. The statement of a witness that "I thought he was manager," being a mere opinion, is entitled to no greater weight than the facts to which the witness testified and upon which the opinion was based. Likewise, the hearsay testimony to the effect that the cashier said that Cohn was manager is of no greater value than the facts to which she testified as a witness for the prosecution.

Whether Cohn was manager and of what he was manager must be determined by the duties he performed, or was authorized to perform, and not by what his position was called, and on principles not unlike those which govern in the determination of whether a position or employment is a public office. In *Coulter* v. *Pool*, 187 Cal. 181, 186 [201 Pac. 120], in discussing the meaning of the words "public

office," it is said: "Its definition and application depend not upon what the particular office in question may be called, nor upon what a statute may call it, but upon the power granted and wielded, the duties and functions performed and other circumstances which manifest the true character of the position and make and mark it a public office, irrespective of its formal designation." ██ It fairly appears from the evidence that Cohn had charge of the purely business end of the dental office in question, except that of fixing prices for work, but there is no evidence that he had or exercised the slightest control or direction of the professional work performed in such office. There is an entire absence of evidence to show that such office was "managed and conducted by the said W. M. Cohn" as charged in the accusation. To manage a place of business is to exercise, to some extent at least, control or direction thereof. (*Gordon* v. *Industrial Acc. Com.*, 199 Cal. 420, 426 [249 Pac. 849]; *E. Clemens Horst Co.* v. *Industrial Acc. Com.*, 184 Cal. 180, 190 [16 A. L. R. 611, 193 Pac. 105].) Section 11 of the statute under which the prosecution was had provides: "Any person shall be understood to be practicing dentistry within the meaning of this act . . . who manages or conducts as manager, proprietor, conductor, or otherwise a place where dental operations are performed." (Stats. 1921, p. 236.) This does not mean, of course, that one who merely manages a building or a room in which licensed dentists perform dental operations is practicing dentistry. A reasonable construction of the quoted provisions of the statute appears to be that, to come within the terms thereof, one must in some manner, to some extent, directly or indirectly, control or direct some professional service of the kind that dentists are licensed to render. To take charge of the advertising, the arrangement with patients for credit, the accounting and collection department, the purchase of supplies as directed, and to see that the laboratory work is promptly delivered do not, singly or collectively, call for any of the professional skill required of a dentist but rather that of one trained in business transactions. Had it been shown that Cohn had authority to participate in the employment or discharge of those engaged to do professional work and the fixing of their compensation a different question would arise. ██ The power to hire and discharge

and to fix the compensation of an employee necessarily implies the power to control his work. But no such power is shown to have been given Cohn. ██ The statute does not purport to prohibit the doing by an unlicensed person of any act which the testimony shows Cohn performed. "The ultimate purpose of the Dental Act is to bring about and insure skill and proficiency in the practice of the profession in this state." (*Jacobs* v. *Board of Dental Examiners*, 189 Cal. 709, 714 [209 Pac. 1006].)

██ The terms of the trust agreement referred to by the witnesses may be such as to show that the accused and his associates were violating the law, but in the absence of evidence thereof the presumption is that the law has been obeyed. ██ The statute is highly penal, and a proceeding thereunder for the revocation of a license to practice dentistry is in the nature of a criminal trial in which all intendments are in favor of the accused. (*Osborne* v. *Baughman,* 85 Cal. App. 224 [259 Pac. 70].)

██ The evidence being insufficient to show that Cohn managed or conducted a place where dental operations were performed, the order of the respondent sustaining the charge was in excess of the power conferred upon it by the Dental Act. (*Garvin* v. *Chambers*, 195 Cal. 212, 223 [232 Pac. 696]; *Osborne* v. *Baughman, supra.*)

The demurrer to the petition is overruled and the order suspending petitioner's license to practice dentistry is annulled.

Plummer, J., and Hart, J., concurred.