[Civ. No. 4866. Third Appellate District.—March 13, 1933.]

WILLIAM E. COFFMAN, Petitioner, v. CALIFORNIA STATE BOARD OF ARCHITECTURAL EXAMINERS, NORTHERN CALIFORNIA, Respondent.

Robt. H. Schwab for Petitioner.

Frank Barry for Respondent.

PULLEN, P. J.—This proceeding arises upon a petition to review a judgment of the State Board of Architectural Examiners of the Northern District, suspending petitioner herein from practicing as an architect for a period of thirty days, for alleged dishonest practice.

The complaint, which was filed by Nelle U. Branch, for whom petitioner had designed a residence, charged that he was guilty of dishonest practice in connection with the plans for such residence and specified certain acts and omissions as evidence thereof, as follows:

"Substitutions were made in practically every phase of work on the house. The work was so slighted throughout as to cheapen the building materially. There is a question as to the actual safety of the structure.

"The house vibrates in the wind, and the floors shake under ordinary tread. A substitution of wooden underpinnings was made in place of concrete foundation, as specified.

"The exterior woodwork and interior trim are Oregon pine, instead of Redwood.

"This is warping and shrinking badly.

"2x6 floor joists were substituted for 2x8.

"With sufficient underpinning, floor girders were smaller than specified.

"Ceiling rafters are 2x4 instead of 2x6, with long spans, and are insufficient to support the ceiling. Roof rafters are light 2x4 size and surfaced 35″ center, instead of 24 as specified.

"The sheathings under the shingles are 1x4—4½″ space. This is very light.

"Local gravel was used instead of crushed rock, as specified.

"Gutters and downspouts are insufficient, and drains were not provided as specified.

"Stucco is in very bad condition, and is not weatherproof, due to the fact that it was not surfaced with two coats of Government whitewash as specified.

"The owner charges that no architectural supervision was given by Mr. Coffman, who has accepted his fee as supervising architect.

"Mr. Coffman did not give the owner a certificate of acceptance of the work of A. J. Fisher, who was legally the contractor.

"Mr. Coffman acted as contractor, throughout the erection of the building."

As to these specifications the Board made the following findings:

"(1) It is true that substitutions were made in various phases of the work on the house, which materially cheapen the building.

"(2) It is true that there is in places considerable deflection, but there is no question as to the actual safety of the structure, although there is vibration of a portion of the floors under ordinary tread.

"(3) It is true that certain substitutions were made in the underpinning of the house.

"(4) It is true that the exterior woodwork and interior trim were changed from redwood to Oregon pine. It is not true that it is warping badly, but certain natural shrinkage is taking place.

"(5) It is true that 2″x6″ floor joists were substituted for 2″x8″ but with the knowledge of the complainant. However, the spans are greater than an alleged agreed limit.

"(6) It is true that the floor girders are smaller than those specified.

"(7) It is true that the ceiling 'rafters' (joists) are 2″x4″ instead of 2″x6″, but are at present sufficient to support the ceiling since additional trusses were found necessary and installed after acceptance of the building.

"(8) It is true that the roof rafters are 2″x4″ spaced approximately at 32″ centers, but the change was made with the owner's knowledge and consent.

"(9) It is true that the sheathing under the shingles and its spacing is standard for this class of work.

"(10) It is true that river gravel was used in the concrete but this was allowed as an alternate by the specifications.

"(11) It is true that gutters and downspouts as shown on the drawings, were omitted, but with the owner's knowledge.

"(12) It is not true that the stucco is in bad condition and it can be considered as waterproof as that specified. The surface has been given two coats of California stucco brush coat, in lieu of Government whitewash as specified.

"(13) It is not true that Mr. Coffman did not give supervising architectural service to the building. Mr. Coffman did act as architect throughout the erection of the building.

"(14) It is true that the building was accepted and the acceptance recorded.

"(15) It is not true that Mr. Coffman acted as contractor for the building but it is true that a contract was executed and carried out between the complainant and A. J. Fisher, as contractor."

Upon these findings the Board rendered the following judgment:

"I.

"That the defendant caused to be drawn under his direction and permitted to be signed a contract which was subject to certain prior verbal agreements which would cheapen the building below the standard set forth by the contract documents—and to the disadvantage and without the knowledge of some of the interested parties. In so doing, the defendant was derelict in his duty as an architect and he is guilty of the charge of dishonest practice.

## "II.

"William E. Coffman has been guilty of dishonest practice of architecture as said term is employed in section 8 of an act entitled, 'An Act to regulate the Practice of Architecture', in the State of California, and by reason thereof the certificate heretofore issued to William E. Coffman by the California State Board of Architectural Examiners, should be, and the same is hereby, suspended from February 4, 1933, to March 6, 1933, inclusive."

"The office of the writ of *certiorari*," as pointed out in *Lanterman* v. *Anderson*, 36 Cal. App. 472 [172 Pac. 625, 626], "is to determine only as to whether the inferior board or court has acted in excess of jurisdiction and the investigation of the trial court will go no further than to inspect the record as it appears written and to determine from that whether there has been action taken unwarranted by the powers granted to the Board or court whose proceedings are under review."

We need not cite authorities upon the proposition that the Architectural Board is not circumscribed by the same formality as to evidence and procedure as a court of law but nevertheless the findings of the Board must find support in the complaint, and the judgment must be based upon the findings.

The right of petitioner to practice his profession, once conferred, is a highly valuable right and he has the right to insist upon proof of the charges made before this right can be taken away.

The findings allege that there were certain alterations and substitutions made in the structure from the plans and specifications as filed, but there is no finding as to whether or not these changes were made with or without the consent of the complainant, and upon that question there is a conflict in the evidence. It does appear, both from the evidence and the findings, that in certain particulars the complainant did consent to certain changes, but in the absence of ·a direct finding, however, this court cannot determine that other changes were made without the consent of the complainant.

The judgment holds that the defendant permitted to be signed a contract which had been modified by certain prior verbal agreements which would have the effect of cheapening

the residence below the standard contract price, and to the disadvantage and without the knowledge of some of the interested parties, but it does not appear whether the prior verbal agreements were made with the knowledge and consent of complainant herein, and who were the interested parties who suffered by the change in construction. We believe petitioner was entitled to know these facts.

We have examined the record and no place do we find any complaint by anyone, other than the complainant, as to the changes in the specifications, and if the changes were made with her consent she cannot, of course, be heard to object at this time. There is some testimony in the record that the persons financing the residence were being defrauded, but whether the lender of the money is dissatisfied with his security, we cannot say from the record, nor can we assume that to be the fact.

It is to be noted that on June 13, 1931, and after the completion of the building, the complainant filed and caused to be recorded in the office of the county recorder of Yolo County, a notice of completion, and the complaint herein was filed with the Architectural Board on November 25, 1932, some eighteen months after the acceptance of the structure. Practically all of the objections urged were known to complainant at the time of the filing of the notice of completion.

This hearing before the Architectural Board was held under the provisions of ''an Act to Regulate the Practice of Architecture'' in the state of California, section 8 thereof, which provides that the Board may suspend for a period not exceeding one year, or revoke for dishonest practice, the certificate issued by the State Board to an architect.

The act does not attempt to define what constitutes dishonest practice, for the very good reason, perhaps, that such dishonest practice assumes such a wide range and variety of acts and misconduct that a definition could not embrace its many forms, but for that reason the acts complained of should be found with such definiteness and certainty that the vice of the acts complained of might be apparent to all. We fail to find such definiteness and cer-. tainty in the present proceeding.

The order complained of is annulled.

Plummer, J., and Thompson, J., concurred.