[Civ. No. 7770. Second Appellate District, Division Two.—May 12, 1933.]

PERL A. SPARKS, Respondent, v. C. E. PRIOR, as President of Board of Dental Examiners, etc., et al., Appellants.

Jesse W. Carter for Appellants.

Fall & Fall for Respondent.

WORKS, P. J.—The Board of Dental Examiners had before it for hearing a petition or complaint in which it was averred that Dr. Sparks was a "regularly licensed and practicing dentist" in the state, as defined by law. The document also alleged that Sparks "did knowingly and wilfully and unlawfully aid and abet an unlicensed person, to wit, David Michaud, to practice dentistry unlawfully in the

State of California, in that the said Perl A. Sparks did then and there permit, authorize and allow said David Michaud to make and enter into contracts, for the performance of dental services, with the public in his office located at 506 South Hill Street, in the City of Los Angeles, County of Los Angeles, State of California, which office was a place where dental operations are performed; and that said David Michaud did then and there, and has for two years last past immediately preceding the date hereof, managed and conducted, as manager or conductor, the office or place of business of said Perl A. Sparks, which office was a place where dental operations were performed, all of which the said Perl A. Sparks well knew, that during all of said time David Michaud was and said David Michaud now is an unlicensed person and was not and is not entitled to practice dentistry in the State of California''. Upon this complaint, after due hearing, the board ordered the suspension of Sparks' license to practice dentistry in the state for five years, with a certain condition under which the license might be restored in one year. Sparks petitioned the superior court for the writ of review, the writ was ordered, and upon final hearing after return, the court annulled the order of the dental board. ■ Defendants, none of whom is a proper party except the board itself, appeal from the judgment of annulment.

The complaint before the board plainly stated grounds, under the State Dental Act, for the rendition of the order which the board made. Indeed, respondent does not contend otherwise. Nor is the point made that there was a failure to prove, before the board, any single fact necessary to enable it to exercise its jurisdiction under the complaint. ■ As the writ of review lies only to correct the exercise of power without jurisdiction, there is but one remaining point open to respondent, and that point he embraces. He contends that there was no evidence whatever before the board to the effect that Michaud was practicing dentistry in the office of respondent. It is admitted by respondent that Michaud was at least in the same situation as that ascribed to Cohn in *Messner* v. *Board of Dental Exmrs.*, 87. Cal. App. 199 [262 Pac. 58, 60]. It was said in that case: ''Cohn had charge of the purely business end of the office, . . . but there is no evidence that he had or exercised the slightest

control or direction of the professional work performed in such office.'' The court then held that within the language of the State Dental Act hereafter to be cited, Cohn had not practiced dentistry. It is upon this peg that respondent hangs his claim of right to the writ of review. He insists that there was no jurisdiction in the dental board to make its order, for the reason that the evidence before it was all on one side, and that was the side favorable to him. We are thus required to review to some extent the evidence upon which the order of suspension was made.

Viola Jenkins, a nurse employed in the office of Sparks, testified that Michaud showed patients of the office samples of different styles of dentures which might be put into their mouths, and contracted with them for the insertion of the kind finally selected. He told them what he thought ''they would enjoy and get better service out of''. Michaud would recommend certain materials for dentures to patients, and ''would usually go ahead and say that certain plates . . . would take probably most of the lines out of the face and bring back more of a youthful appearance''. He said to patients that certain plates would help ''facial corrections''. These conversations between Michaud and patients took place in operating rooms of the office, with the patient sitting in a dental chair. Sometimes one of the dentists employed in the office would be present at these conversations, sometimes not.

One of the witnesses at the hearing was B. Albert Ash, a patient. When he first went to the office of Sparks, he lay in a dental chair and Michaud inserted a dental mirror into his mouth and made an examination of it. Michaud then called Dr. Merrifield, one of the dental operatives in the office, and the doctor examined Ash's mouth by the same means. Ash had some old bridgework in place, and Michaud said, ''All those bridges will have to come out and your mouth is in plenty bad shape.'' Merrifield then said that ''they would have to take out all the upper teeth''. Michaud said to Ash: ''We will make these extractions and we will give you an upper set of teeth and a lower lingual bar for the sum of $60.00. . . . We will allow you $10.00 for that gold that is in your mouth.'' Michaud said the work would help Ash's looks. ''Dr. Merrifield didn't have much to say at all.'' It was then agreed that the work was to be done

and Ash commenced his visits to the office. Sometimes when he went there Michaud, as well as Merrifield, who was doing the work, looked into Ash's mouth. One day Merrifield was absent from the office and Michaud took Ash to another operative and said: "Paint his mouth up for him, he has some pain in his upper gums." The dentist then made an application of mercurochrome.

Dr. Merrifield was also a witness. He testified: "Did you ever hear him [Michaud] advise a patient that a certain kind of plate would improve their looks or appearance? A. Yes." When Michaud had contracted the work with a patient he told Merrifield "what the patient was going to have". Merrifield further said that when he "had not been in at the examination of a patient", Michaud told him "to go in and for instance take impressions for full plates or partial plates or whatever the case may be". Merrifield also testified: "Q. And you and the other dentists who were employed there didn't have anything to say about the price of the work or the character of the restoration that was to take place, if Mr. Michaud was there and made that arrangement, is that right? A. Well, we used to talk it over in front of the patient oftentimes. Q. Talk it over with Mr. Michaud? A. Yes, sir, in front of the patient. Q. But he had the final say on it? A. Yes, sir, generally. Q. As to the amount or as to the quality of work that went into the mouth, is that right? A. Yes."

This evidence supports the finding of the dental board that Michaud practiced dentistry (Act 2048, Deering's Gen. Laws, 1931, sec. 11, subds. 4 and 5), although it may be that the complaint did not sufficiently charge an offense under subdivision 4 of the statute. The proceeding is therefore not within the rule stated in *Messner* v. *Board,* 87 Cal. App. 199 [262 Pac. 58].

The evidence before the board showed that Michaud had no license to practice, that he was "in authority" in the office of Sparks, and that Sparks knew what he was doing. Indeed, no point is made by respondent as to these questions.

Judgment reversed, with directions to the trial court to enter judgment affirming the order of the Board of Dental Examiners.

Craig, J., and Stephens, J., concurred.