[Civ. No. 13475.   First Dist., Div. Two.   Aug. 6, 1948.]

GEORGE MANTZOROS et al., Respondents, v. STATE BOARD OF EQUALIZATION et al., Appellants.

[Civ. No. 13496.   First Dist., Div. Two.   Aug. 6, 1948.]

GUY WILKINSON et al., Respondents, v. STATE BOARD OF EQUALIZATION et al., Appellants.

Fred N. Howser, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

Wm. E. Ferriter, Jas. C. Purcell and Thos. P. Kelleher for Respondents.

DOOLING, J.—In these two cases (consolidated on appeal for briefs, arguments and decision) the State Board of Equalization appeals from two orders directing the issuance of peremptory writs of mandate.

The order in the Wilkinson case directs the board and its members to refrain from imposing any sentence, suspension or penalty on petitioners. The petition shows that on December 12, 1946, the board made an order suspending petitioner's license for 15 days because of violation of section 59.6 of the Alcoholic Beverage Control Act [Stats. 1945, p. 1474; 2 Deering's Gen. Laws, Act 3796] by serving persons on the licensed premises on August 28, 1946, at the hour of 1:30 a. m. In the Mantzoros case the board adopted a proposed decision proposing 15 days' suspension for violation of section 59.6 of the Alcoholic Beverage Control Act because one of respondents' employees, acting within the course of employment, had sold a bottle of whiskey to a patron in the licensed premises on May 23, 1946, at the hour of 10:10 p. m. The principal ques-

tion argued is whether section 59.6 was still in force at the time of the two alleged violations.

Section 59.6 (Stats. 1945, p. 1474) contains the following duration clause:

"This section shall remain in effect until the ninety-first day after final adjournment of the Fifty-seventh Regular Session of the Legislature or *until six months after the cessation of hostilities in all wars in which the United States is now engaged,* whichever first occurs." The italicized language is that in question.

The principal question presented on these appeals is whether the words "cessation of hostilities" should be interpreted to refer to the date upon which all active fighting in the wars referred to actually ended or the date when the President of the United States of America formally declared that all hostilities had ceased. If the latter, since the President's formal proclamation fixed the time of the cessation of hostilities as 12 o'clock noon on December 31, 1946, section 59.6 remained in force by its terms until June 30, 1947, and the two acts which resulted in the disciplinary action here under review occurred while that section was still in force and the sales were at hours forbidden by that section. On the other hand if section 59.6 was no longer in effect when these two sales were made the general law which was temporarily superseded by section 59.6 did not forbid them.

It was the view of the judge of the trial court that the cessation of hostilities referred to the end of active fighting and that section 59.6 was no longer in effect when the two sales were made. Were it not for the legislative and administrative interpretation placed upon this language after the capitulation of Japan this construction would find strong support in decided cases. (*Samuels* v. *United Seamen's Service,* 165 F.2d 409; *Queen Ins. Co. of America* v. *Globe & Rutgers Fire Ins. Co.,* 282 F. 976; and cf. *In re Blaney,* 30 Cal.2d 643, 656-657 [184 P.2d 892].)

However on September 25, 1945, the Attorney General of the State of California rendered an opinion on this question at the request of the member of the California Assembly from the Tenth Assembly District. (6 Ops. Cal. Atty. Gen. 132.) This opinion mentions 47 1945 enactments that contain a similar duration clause mentioning "cessation of hostilities." It also mentions 13 enactments of 1945 or earlier, which with regard to duration expressly add as declared by the President or Congress of the United States or similar language to

"cessation of hostilities." The conclusion is drawn that the legislative intent as to the 47 statutes that did not include the reference to a proclamation is the same as the 13 that have such reference, and that the 47 statutes remain in force until formal proclamation of cessation of hostilities or prior repeal by the Legislature. This opinion was filed both with the Senate and the Assembly at the special session of the Legislature in January, 1946, and by each house of the Legislature ordered printed in its Journal. Furthermore it is unquestioned that the State Board of Equalization accepted this opinion and acted upon it by enforcing the closing hours provided in section 59.6 upon its liquor licensees until June 30, 1947.

It is a well-settled rule of statutory construction that when the language of a statute is open to any doubt as to its proper interpretation legislative and administrative construction is to be given great weight by the courts in arriving at its proper meaning. (*Mudd* v. *McColgan*, 30 Cal.2d 463, 470 [183 P.2d 10]; *Coca-Cola Co.* v. *State Bd. of Equalization*, 25 Cal.2d 918, 921 [156 P.2d 1]; *Los Angeles County* v. *Superior Court*, 17 Cal.2d 707, 712 [112 P.2d 10]; *People* v. *Southern Pac. Co.*, 209 Cal. 578, 594-595 [290 P. 25]; *Kaiser* v. *Hopkins*, 6 Cal.2d 537, 540 [58 P.2d 1278].) The words here under consideration are not free from doubt. Even under the construction suggested by respondents what was the date on which all active fighting ceased? Was it August 14, 1945, at which time the orders were given to cease firing, or September 1, 1945, when the Japanese government formally surrendered on board the U. S. S. Missouri, or was it some other date when the last Japanese soldier in some remote island not knowing of the capitulation of his country fired the last shot at an American soldier, sailor or marine? It was with uncertainties of this sort in mind that the Supreme Court of the United States said in *United States* v. *Anderson*, 76 U.S. 56, 69-70 [19 L.Ed. 615] (in construing an act of Congress allowing certain claims to be filed within two years "after the rebellion was suppressed"):

"It is argued, as the rebellion was in point of fact suppressed when the last Confederate general surrendered to the National authority, that the limitation began to run from that date. If this were so, there is an end to the controversy; but did Congress mean, when it passed the statute in question, that the Union men of the South, whose interests are especially cared for by it, should, without any action by Congress,

or the Executive on the subject, take notice of the day that armed hostilities ceased between the contending parties . . .? The inherent difficulty of determining such a matter, renders it certain that Congress did not intend to impose on this class of persons the necessity of deciding it for themselves."

The inherent difficulty of determining the exact date of "the cessation of hostilities" is as great in this case. The legislative and administrative construction under which the closing hours of section 59.6 continued to be enforced until June 30, 1947, with the acquiescence of the Legislature, and with few exceptions of all of the liquor licensees and other citizens of the state amounts, under the circumstances, to the practical adoption of the President's official proclamation that December 31, 1946, was the date of the "cessation of hostilities." It had the advantage of certainty which any other date lacked; and having been generally accepted and acted upon we are satisfied that it is our judicial duty to follow it.

There is nothing to the argument that so to construe the statute is to delegate state legislative power to the President. (1 Sutherland, Statutory Construction (3d ed.), pp. 68-70; *Brock* v. *Superior Court,* 9 Cal.2d 291, 297-298 [71 P.2d 209, 114 A.L.R. 127]; *Ex parte Gerino,* 143 Cal. 412, 414-415 [77 P. 166, 66 L.R.A. 249]; *Arwine* v. *Board of Med. Examiners,* 151 Cal. 499, 503 [91 P. 319]; *In re Lasswell,* 1 Cal. App.2d 183, 203 [36 P.2d 678].)

Counsel in the Mantzoros case advance the additional argument that under section 59.6 they cannot be held liable for the action of their employee in making a sale which was not shown to be known to or directed or authorized by them. It is to be noticed that the question in their case is not whether they are criminally liable for their employee's act, a question which we need not decide, but whether they can be subjected to discipline by the Board of Equalization because their employee made a sale of liquor at an hour forbidden by that section. The licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license, else we would have the absurd result that liquor could be sold by employees at forbidden hours in licensed premises and the licensees would be immune to disciplinary action by the board. Such a result cannot have been contemplated by the Legislature. Even in the case of criminal statutes vicarious liability for the acts of employees is not unknown... (*In re Marley,* 29 Cal.2d 525

[175 P.2d 832] ; *In re Casperson,* 69 Cal.App.2d 441 [159 P.2d 88] ; *People* v. *Schwartz,* 28 Cal.App.2d Supp. 775 [70 P.2d 1017] ; and cf. *Sandstrom* v. *California Horse Racing Board,* 31 Cal.2d 401 [189 P.2d 17].)

The orders appealed from are reversed.

Nourse, P. J., and Goodell, J., concurred.