[Civ. No. 16165.   First Dist., Div. One.   Aug. 18, 1954.]

JEROME C. CORNELL, Appellant, v. GEORGE R. REILLY et al., as Members of STATE BOARD OF EQUALIZATION, Respondents.

Donovan, Stuhr & Martin and Charles Stuhr for Appellant.

Edmund G. Brown, Attorney General, and William M. Bennett, Deputy Attorney General, for Respondents.

PETERS, P. J.—The State Board of Equalization, after hearings before a hearing officer and the board, found that Jerome Cornell, the owner of an on-sale general liquor license and the operator of a restaurant-bar in San Francisco, had employed two girls to encourage customers to buy them drinks in violation of the law. Because of such violation, Cornell's liquor license was ordered revoked. Cornell, under the provisions of section 1094.5 of the Code of Civil Procedure, applied to the superior court for a writ of mandate to review the

validity of the revocation order. That court found that the findings of the board were supported "by substantial evidence and by the weight of the evidence," that the findings constituted good cause for revocation, and denied the petition for a writ of mandate. Cornell appeals from the judgment based on those findings.

The accusation before the board contained two counts. The first charged Cornell with employing, on certain dates, two named girls for the purpose of procuring or encouraging the purchase or sale of alcoholic beverages, and with paying these girls a commission for such services. The second count is not here involved.[1] The first count charges, without mentioning, the commission of acts declared unlawful by section 303 of the Penal Code. That section makes it a misdemeanor for a liquor seller "to employ upon the premises where the alcoholic beverages are sold any person for the purpose of procuring or encouraging the purchase or sale of such beverages, or to pay any person a percentage or commission on the sale of such beverages for procuring or encouraging such purchase or sale." Section 24200 of the Business and Professions Code[2] provides that it is grounds for the suspension or revocation of a license "(a) When the continuance of a license would be contrary to public welfare or morals . . . (b) . . . the violation or the causing or the permitting of a violation by a licensee of . . . any rules of the board . . . or any other penal provisions of law of this State prohibiting or regulating the sale . . . of alcoholic beverages. . . ."

A hearing on the accusation was had, as provided by law, before a hearing officer, whose proposed decision, findings and conclusions, recommending revocation, were adopted by the board. Thereafter, Cornell, under the provisions of section 11521 of the Government Code, petitioned for a reconsideration, which was granted, and a second hearing was then had before the board. The board reaffirmed its original decision. It found that Cornell, on the dates in question, did employ the two girls named in the accusation "for the purpose of pro-

---

[1]This second count charged Cornell with possession on the licensed premises on a certain date of 11 empty distilled spirits bottles, which, under the law, should have been destroyed. Cornell was found to have violated the law in this respect, and his license was suspended for 15 days for such violation. The validity of that suspension is not challenged in these mandate proceedings.

[2]This section was added to the Business and Professions Code in 1953. Before that, its provisions, in substance, were to be found in 2 Deering's General Laws, Act No. 3796, section 40.

curing or encouraging the purchase or sale of alcoholic beverages,'' in violation of section 303 of the Penal Code, but that it was not true that Cornell paid the girls a percentage or commission for procuring or encouraging such purchases or sales in violation of that section. Revocation of Cornell's license was ordered. The superior court, in the mandate proceedings, found these findings were supported and refused to grant the writ.

The basic facts as presented to the hearing officer and to the board, and as accepted by the board and the reviewing court, are not in serious dispute. Cornell, the owner of the bar and liquor license, was not present on the premises during the times the alleged offenses occurred, nor did he testify at the hearing before the hearing officer. During all times here relevant Cornell had delegated the operation of the bar to William Andrews, the bartender-manager. Just before midnight on March 24, 1953, several liquor control officers entered the bar. One of them, by the name of Wright, testified that he sat at the bar; that a woman, who later identified herself as Dottie Shannon, one of the entertainers, sat down beside him; that after some conversation he ordered a drink for himself and she asked ''Am I in?''; that he replied that she was, whereupon the bartender Andrews, without further orders, served her a ''champagne cocktail'' taken from a Champale[3] bottle; that the bartender charged him eighty-five cents for the highball ordered by him, and $1.50 for the cocktail served to the girl; that during the next hour he and Miss Shannon had three drinks each; that on each occasion he was charged $2.35 for the two drinks; that after the serving of the drinks the bartender made a notation on a pad lying beside the cash register.

Officer Wright returned to the bar at about 10:50 p. m. on the night of March 27, 1953. He testified that on that occasion he observed Andrews serving drinks to Dottie Shannon and another identified liquor officer, and that each time a drink was served to the girl a notation was made by the bartender on the pad. Wright testified that he observed that the type of drink, price and procedure of notation were identical to his own prior experienced solicitation. Two other officers testified that on these occasions they had substantially simi-

[3]Champale is a malt beverage of low alcoholic content and much cheaper than champagne. It costs but 40 cents a bottle. The drinks here involved were 2 or 3 ounces each.

lar experiences with Miss Shannon or Miss Lee, another entertainer. They corroborated Wright in all substantial respects.

The officers decided to and did make the arrest in the early morning hours of March 28, 1953. They confiscated the remainder of one of the girl's drinks, which, upon analysis, was discovered to have an alcoholic content of 5.1 per cent. They also confiscated the pad upon which the notations had been made, and 11 empty, but unbroken, distilled spirits bottles found under the bar. The pad contained the names of all of the entertainers and some other employees, and after each name were tally marks, and dollars and cents figures.

Andrews was then arrested. Vickie Lee, one of the entertainers for whom the officers had purchased drinks, told the officers at the time of Andrews' arrest that she was paid fifty cents by her employer for each "champagne cocktail" purchased for her. At the hearing before the hearing officer Miss Lee denied making any such statement, denied that she received any commission for the solicitation of drinks, and testified that she paid for all drinks consumed by herself when she cashed her paycheck each week. Andrews admitted keeping the pad with the tally marks after each entertainer's name, but testified that this was done to keep a record of the number of drinks each girl consumed and for which they were charged at the end of each week. This, according to him, was the reason for the tally marks and the dollars and cents figures after each girl's name on the pad. It will be noted that the officers had testified that they had paid $1.50 each for the drinks consumed by the entertainers, and that marks were made on the pad after the purchase of each drink for an entertainer. Thus, if Andrews' and Miss Lee's testimony had been believed, which it was not, the bar received double payment for the drinks consumed by the entertainers. Otherwise, there would have been no reason for keeping a record of drinks already paid for.

It was stipulated that if Cornell were present he would testify that Andrews had told him that the bar was being conducted lawfully and according to the rules and regulations of the board, and that, although female entertainers were employed, they were never paid any sums except the contract wages for their dancing and singing; in other words, were not employed to solicit drinks. The written contracts of the entertainers providing a salary for singing and dancing only were introduced into evidence, as well as certain paychecks issued to the entertainers. It also appears in evidence that

Andrews had been charged with a violation of section 303 of the Penal Code and with keeping empty unbroken alcoholic beverage bottles on the premises, that he had been tried before a jury in the municipal court, and that he had been acquitted of both charges.

The basic argument of appellant is that administrative proceedings looking toward the revocation of a liquor license are criminal in nature insofar as the *quantum* of proof is concerned, and that the evidence here does not meet that test. The principal California case relied upon to establish this premise is *Messner* v. *Board of Dental Examiners*, 87 Cal.App. 199, where, at page 205 [262 P. 58], it is stated in reference to a proceeding resulting in the suspension of a dental license: "The statute [the Dental Act] is highly penal, and a proceeding thereunder for the revocation of a license to practice dentistry is in the nature of a criminal trial in which all intendments are in favor of the accused." Based on this argument, the appellant contends that all of the elements of the offense or offenses defined in section 303 of the Penal Code were not proved. Appellant admits that the evidence shows that he hired entertainers, but correctly points out that such is perfectly legal. He also admits that the evidence shows that these entertainers solicited drinks from patrons of the bar, but correctly points out that mere solicitation by employees of drinks, under the law as it then existed, constituted no offense against the liquor laws so far as the licensee was concerned. He argues that to constitute an offense under section 303 of the Penal Code the employees must be hired "for the purpose" of soliciting drinks,[4] and that this requires evidence of a specific intent or "*mens rea*" on his part to so hire the employees. Appellant urges that there is no evidence at all of his specific intent to hire personnel to solicit drinks. Appellant further argues that, since the record shows that he personally was out of the city when the challenged acts took place, he cannot be held responsible for the acts of Andrews in the absence of any evidence that he authorized those acts, because the statute requires proof of his specific intent.

■ It may be conceded that in disciplinary administrative

---

[4]The section prohibits the hiring of persons for the purpose of soliciting drinks or from paying any person a commission for soliciting drinks. So far as the "pay" provision of the statute is concerned, the board found the charge unfounded. The validity of the revocation, therefore, must be upheld, if at all, upon the charge of hiring employees for the purpose of soliciting drinks.

proceedings the burden of proof is upon the party asserting the affirmative (*Bley* v. *Board of Dental Examiners*, 87 Cal.App. 193 [261 P. 1036]), and that guilt must be established to a reasonable certainty (*Furman* v. *State Bar*, 12 Cal.2d 212 [83 P.2d 12] ; *Coffman* v. *Board of Architectural Examiners*, 130 Cal.App. 343 [19 P.2d 1002]) and cannot be based on surmise or conjecture, suspicion or theoretical conclusions, or uncorroborated hearsay. (See cases collected 2 Cal.Jur.2d 248, § 145.) But it is now well settled that such proceedings are not criminal in nature, and are not governed by the law applicable to criminal cases. (See many cases collected 2 Cal. Jur.2d 169, § 87.) The contrary language found in the Messner case (87 Cal.App. 199, 205) above quoted has been classified as a mere "dictum," and expressly disapproved. (*Webster* v. *Board of Dental Examiners*, 17 Cal.2d 534, 539 [110 P.2d 992].) ▆ The object of an administrative proceeding aimed at revoking a license is to protect the public, that is, to determine whether a licensee has exercised his privilege in derogation of the public interest, and to keep the regulated business clean and wholesome. Such proceedings are not conducted for the primary purpose of punishing an individual. (See cases collected 2 Cal.Jur.2d 169, § 87, at p. 170.) Hence, such proceedings are not criminal in nature.

These principles are now well settled in this state, although admittedly there was language in several early cases to the contrary. The problem was thoroughly discussed and settled in *Webster* v. *Board of Dental Examiners*, 17 Cal.2d 534 [110 P.2d 992]. In that case, at page 537, it is stated:

"Appellant first challenges the order of suspension on the theory that administrative proceedings to revoke a professional license are quasi-criminal in nature. It is suggested that the rules governing burden of proof, and *quantum* of proof must be those which apply in criminal trials, and that in consequence the board used an improper standard in weighing the evidence. This analogy between a proceeding to revoke a license and a criminal trial is found in a number of the earlier cases. . . .

"Where, on the other hand, the legislature has created a professional board and has conferred upon it power to administer the provisions of a general regulatory plan governing the members of the profession,[5] the overwhelming weight of authority has rejected any analogy which would require

---

[5]In the instant case the State Board of Equalization was created by and receives its powers directly from the Constitution. (Art. XX, § 22.)

such a board to conduct its proceedings for the revocation of a license in accordance with theories developed in the field of criminal law. [Citing many cases.] Many California cases have expressly rejected the contention that administrative proceedings for the revocation of a professional license are to be governed by criminal law theories on matters of evidence. [Citing many cases.] . . .

"Some of the cases relied upon by appellant are clearly distinguishable. . . . The statement in *Messner* v. *Board of Dental Examiners,* 87 Cal.App. 199, 205 [262 P. 58] . . . that the proceedings were *quasi*-criminal in nature is *dictum* which is contradicted so far as it relates to matters of evidence by the long line of cases cited above. . . . The few remaining decisions which contain language tending to support petitioner's view are contrary to the great weight of authority in California and elsewhere, as pointed out above."

In *Kendall* v. *Board of Osteopathic Examiners,* 105 Cal. App.2d 239, 248 [233 P.2d 107], this court quoted, with approval, the following statement from *Murphy* v. *Board of Medical Examiners,* 75 Cal.App.2d 161, 166 [170 P.2d 510] : " 'The proceeding here involved is an administrative, disciplinary proceeding, and is not criminal in its nature, nor is it to be judged by the legal standards applicable to criminal prosecutions.' "

██ Thus, it follows that this proceeding for the revocation of a liquor license is a disciplinary function of the State Board of Equalization, and that the standards to be applied are not those applicable to criminal trials.   Furthermore, in the instant case, it was not necessary for the board to find that there had been a criminal violation of section 303 of the Penal Code in order to revoke the license.   ██   Article XX, section 22, of the Constitution, confers on the board "the exclusive power to license . . . sale of intoxicating liquors in this State, . . . and shall have the power, in its discretion, to deny or revoke any specific liquor license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals."   This means that since a liquor license is a permit to do what would, without such license, be unlawful, the board need not define by law or rule all of the things that will put that license in jeopardy. (*Moore* v. *State Board of Equalization,* 76 Cal.App.2d 758, 764 [174 P.2d 323] ; see also Bus. & Prof. Code, § 24200; *Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 131 [173 P.2d 545].)

■  Thus, although it is not indispensable to a holding in the instant case that the evidence supports the findings, because the evidence does show a violation of section 303 of the Penal Code, it is the law that appellant's license could have been revoked irrespective of a violation of a specific Penal Code section, if the evidence shows a situation contrary to public welfare or morals.

■  Tested by the standards applicable to administrative proceedings, or even by the standards applicable to criminal trials, the evidence here is sufficient to support the finding of a hiring for the purpose of solicitation. The fact that the girls were employed by appellant is conceded. The fact that they, on numerous occasions, solicited drinks from patrons of the bar was established by substantial evidence, and is not denied. The fact that the bartender-manager Andrews knew of such solicitation was established by the record kept by the bar of all drinks consumed by the entertainers, even though paid for by a patron. Under such a state of facts the inference that such solicitation was an integral part of the employment of the entertainers is not only reasonable, but almost inevitable. Thus, even if it was necessary to establish that appellant had a specific intent to hire the employees for solicitation purposes, such fact was established by clear evidence and the reasonable inferences therefrom.  ■  Intent can, of course, be proved by circumstantial evidence. (Pen. Code,§ 21; *People* v. *Von Mullendorf*, 110 Cal.App.2d 286 [242 P.2d 403].)

■  The contention of appellant that even if a hiring of girls for the purpose of soliciting drinks was proved, the evidence shows such hiring was by Andrews, his manager and agent, and cannot be charged to him in the absence of evidence that he knew of or directed such acts, because the Penal Code section requires a specific intent on the part of the person charged, requires but brief consideration. The question is not whether appellant is criminally liable for the acts of Andrews, but whether the board can revoke a license because of the acts of the manager of the establishment in violating the provisions of section 303 of the Penal Code. Obviously, as was said in *Mantzoros* v. *State Board of Equalization*, 87 Cal.App.2d 140, 144 [196 P.2d 657] : ''The licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license, else we would have the absurd result that liquor could be sold by employees at forbidden

hours in licensed premises and the licensees would be immune to disciplinary action by the board. Such a result cannot have been contemplated by the Legislature. Even in the case of criminal statutes vicarious liability for the acts of employees is not unknown." By virtue of the ownership of a liquor license such owner has a responsibility to see to it that the license is not used in violation of law. Obviously, the economic benefits of the solicitation of drinks by the entertainers with Andrews' knowledge and participation redounded to the benefit of appellant. The responsibility for Andrews' acts in the operation of the license can and should be imputed to appellant.

The somewhat related argument that Andrews' acquittal in the criminal action constitutes a conclusive determination, binding in this proceeding, that such offenses had not been committed is equally without merit. Even if appellant had been charged criminally and acquitted, such acquittal would be no bar in a disciplinary action based on the same facts looking towards the revocation of a license. (*Traxler* v. *Board of Medical Examiners*, 135 Cal.App. 37 [26 P.2d 710]; *Bold* v. *Board of Medical Examiners*, 135 Cal.App. 29 [26 P.2d 707]; *Saxton* v. *State Board of Education*, 137 Cal.App. 167 [29 P.2d 873].) Quite clearly, if the principle of res judicata is rejected where the defending party is identical in the two actions, it necessarily follows that it is not res judicata when the prior acquittal is of a different party.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.