[Civ. No. 21311. Second Dist., Div. Three. June 4, 1956.]

MAXWELL CAFE, INC., Appellant, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Respondents.

George W. Rochester for Appellant.

Edmund G. Brown, Attorney General, Howard S. Goldin and Edward M. Belasco, Deputy Attorneys General, for Respondents.

VALLÉE, J.—The Board of Equalization revoked petitioner's general on-sale license to sell alcoholic beverages at Maxwell Café, a saloon and restaurant. The appeal is from a judgment denying a writ of mandate to compel the board to annul its order and reinstate the license.[1]

The accusation filed against petitioner charged 41 violations of section 25601 of the Business and Professions Code[2]

---

[1]The Board of Equalization made the order of revocation. The writ was directed to the Department of Alcoholic Beverage Control which was given the power of licensing, suspending, and revoking licenses effective January 1, 1955. (Const., art. XX, § 22, as amended November 2, 1954.)

[2]Formerly section 58 of the Alcoholic Beverage Control Act. (2 Deering's Gen. Laws, 1944, Act 3796.)

Section 25601 reads: "Every licensee, or agent or employee of a licensee, who keeps, permits to be used, or suffers to be used, in con-

in that from May 31, 1947 to February 11, 1954, it did suffer and permit persons to resort and remain on the licensed premises in a drunken condition, to sell, give, and use narcotics, to solicit other persons to engage in homosexual acts, and to engage in bookmaking and other forms of gambling on the premises.

The hearing officer of the board who received the evidence found that petitioner did, from about May 31, 1947 to September 3, 1953, permit and suffer the licensed premises "to be used as a place to which persons did resort thereto and commit lewd acts and other violations of the law contrary to public welfare and morals resulting in the arrests of 41 persons." He concluded petitioner had violated section 25601 and recommended revocation of the license. The findings and recommendation were adopted by the board as its decision. Thereafter the superior court denied a writ of mandate after reviewing the record before the board.

The question is whether the evidence is sufficient to warrant revocation of the license. Petitioner is a corporation. On October 22, 1946, an on-sale license number P-3688-H was issued to the corporation. The record does not show who were the stockholders of the corporation prior to December 27, 1951. On December 27, 1951, Max Newman, Sidney Newman, brother of Max, and Henry Newman, son of Sidney, purchased all the stock of the corporation and since that date Max Newman has been president and general manager of the corporation and in sole, active charge of the licensed premises. The hearing officer found that prior to December 27, 1951, the Newmans had no connection with the corporation. He also found that "[o]f the 41 arrests, eight occurred between 12-14-52 and 9-3-53 or since the Newmans took over this corporation, seven being vag. lewd arrests and one on suspicion of a narcotic violation. None of the arrests were brought to the attention of Max Newman." There was no evidence that any of the persons arrested had been convicted of any public offense.

Petitioner argues that since there was no evidence any one of the persons arrested had been convicted, the evidence is insufficient to support revocation of the license. Counsel

junction with a licensed premises, any disorderly house or place in which people abide or to which people resort, to the disturbance of the neighborhood, or in which people abide or to which people resort for purposes which are injurious to the public morals, health, convenience, or safety, is guilty of a misdemeanor."

relies on *Stoumen* v. *Reilly,* 37 Cal.2d 713 [234 P.2d 969]. His reliance is misplaced. In Stoumen an indefinite suspension was reversed. The finding of the board was that the petitioner "kept and permitted his licensed premises to be used as a disorderly house in that . . . persons of known homosexual tendencies patronized said premises and used said premises as a meeting place." In stating the facts, the court said "[t]here was no showing that any of those arrested were convicted." It was not held that it was necessary to show convictions. The court stated (p. 715) : "There was no evidence of any illegal or immoral conduct on the premises or that the patrons resorted to the restaurant for purposes injurious to public morals" and (p. 716) "[t]he terms of the section [§ 58, now Bus. & Prof. Code, § 25601] refer to conduct on the premises or resort thereto for improper purposes." (*Cf. Cornell* v. *Reilly,* 127 Cal.App.2d 178 [273 P.2d 572].)

▇ In the present case there was evidence of illegal and immoral conduct on the licensed premises and that patrons resorted to the premises for purposes injurious to public morals. There was evidence that numerous homosexual acts were committed on the premises, that liquor was sold to obviously intoxicated persons, and that beer was sold to minors —all of which were done in the immediate presence of police officers. There was evidence that some of the homosexual activities and some of the arrests took place in the presence of petitioner's employees. Further, the board could infer knowledge of such activities on the part of Max Newman. He was present on the premises every day from 2 p. m. to 2 a. m. Some of the activities took place where anyone could see them. His testimony was merely that none of the items in the accusation had been brought to his attention. He did not testify he had not observed such conduct after he became manager. He did testify that none of the arrests had been brought to his attention, and the board so found. ▇ Whatever is suffered or permitted by the agent and employees of a licensee is attributed to the licensee. ▇ The owner of a liquor license has the responsibility to see to it the license is not used in violation of law. (*Mantzoros* v. *State Board of Equalization,* 87 Cal.App.2d 140, 144 [196 P.2d 657] ; *Cornell* v. *Reilly,* 127 Cal.App.2d 178 [273 P.2d 572].) The evidence was such that the board could well conclude Maxwell Café was not only a saloon and restaurant where homosexuals merely gathered as members of the public to eat and drink, as was the case in *Stoumen* v. *Reilly, supra,* 37 Cal.2d 713,

but was a place where homosexuals openly solicited partners and actually engaged in homosexual practices. The power of factual decision is in the board. We may not reweigh the evidence. ▮▮ The scope of review of the board's decision is limited to determining whether it is supported by substantial evidence. (*Chosick* v. *Reilly,* 125 Cal.App.2d 334 [270 P.2d 547]; *Marcucci* v. *Board of Equalization,* 138 Cal.App.2d 605 [292 P.2d 264].) There is substantial evidence that petitioner suffered and permitted the licensed premises to be used for purposes contrary to public welfare and morals. The board has power to revoke a license when its continuance would be contrary to public welfare or morals. (Bus. & Prof. Code, § 24200.)

Of the 41 arrests, 33 took place prior to December 27, 1951, the time the Newmans purchased all the stock of the corporation, and eight took place thereafter, seven of the eight in 1953. Of the eight arrests, seven were for homosexual acts committed on the premises in the presence of police officers, and the other was for suspicion of possessing narcotics. There was no evidence that either of the Newmans or any of petitioner's employees had any ground for suspecting the person had narcotics in his possession. Petitioner contends it cannot be charged with or its license revoked because of acts which occurred before the Newmans acquired all the stock. The argument is that the referee found there had been no prior disciplinary action against the corporation; after the Newman family purchased the stock the corporation was merely its agent; the court on the facts should pierce the corporate veil, apply the doctrine of *alter ego,* and hold that the Newmans cannot be charged for violations for which they were in no way responsible.

Assuming, without deciding, that the board could have gone behind the corporate form, the record is devoid of any evidence that the corporation was the *alter ego* of the Newmans. The only witness who testified before the hearing officer in behalf of petitioner was Max Newman. He testified: I am and have been since December 1951 the president and general manager of Maxwell Café, a corporation. The present owners acquired the stock of the corporation on December 27, 1951. Prior to that date I had no connection with the business. Henry Newman, my brother, Sidney Newman, Henry's son, and I acquired the stock. My co-owners "are not there. I run it exclusively." I work at the place 7 nights a week from 2 p. m. to 2 a. m. watching the employees and the patrons.

"I want to clarify something Mr. Avery asked me and it just dawned upon me. Some time after acquiring this stock, there is some stock in the name of Sarah Bedell is my sister, Louis Bedell is her son, which is also a nephew of mine. I stated before that the only stock was Henry Newman, Sidney Newman and Max Newman, but that is not correct." None of the relatives who are in with me now had any connection with the corporation before December 27, 1951.

There was no other evidence on the subject.

■ Generally a corporation is a distinct legal entity separate from its stockholders and from its officers. ■ There are circumstances in which the corporate entity will be disregarded and the corporation will be considered in law as the *alter ego* of the persons composing it, as when the corporation is but the instrumentality through which one or more persons, the sole owners of the capital stock, for convenience transact their business and injustice to third persons results from the double relationship. (12 Cal.Jur.2d 604, § 7 et seq.) It is only under exceptional circumstances that the corporation may be disregarded. (*Judelson* v. *American Metal Bearing Co.*, 89 Cal.App.2d 256, 262 [200 P.2d 836].) There must be affirmative proof or direct inference from proof that there is such unity of interest and ownership as indicates cessation of the individuality and separateness of the individuals and the corporation. (*Id.*, 263.) The corporation must be treated as a separate entity until such proof is made. (*Relley* v. *Campbell*, 134 Cal. 175, 176 [66 P. 220].) ■ Mere ownership of all the stock and control and management of a corporation by one or more individuals is not of itself sufficient to warrant disregarding the corporate entity. (*Norins Realty Co.* v. *Consolidated Abstract & Title Guar. Co.*, 80 Cal.App.2d 879, 883 [182 P.2d 593].)

Max Newman and his relatives are the stockholders of petitioner corporation, but they are the stockholders. Their power is simply to act as stockholders. (*Estate of Winder*, 99 Cal.App.2d 83, 85 [221 P.2d 193].) Their power is to vote the stock. ■ "In the absence of confusion of corporate with individual affairs, or failing to disclose to third parties the existence of the two entities, or abuse or bad fa[i]th in the exercise of corporate control, the corporate entity will not be disregarded." (*Shafford* v. *Otto Sales Co., Inc.*, 119 Cal.App.2d 849, 862 [260 P.2d 269].) ■ A change in the ownership of the stock does not change the liabilities of the corporation. One may not derive advan-

tages that result from the corporate form of doing business and escape the disadvantages of the existence of the corporation. There was no evidence as to who are the directors of the corporation. There was no evidence with respect to the amount of stock owned by Max Newman or by any one of the other stockholders. There was no evidence which indicated cessation of the individuality and separateness of the individuals and the corporation. All the evidence shows is that several individuals own the stock and that Max Newman is president and general manager of the corporation and that he works on the licensed premises. There was no evidence which would have warranted the board in disregarding the corporate entity.

Petitioner says that at the time the Newmans purchased the stock Max Newman reported the purchase to the board and his fingerprints and those of the other stockholders were taken, and that in "January 1952 the Board passed the transfer of the license to the present stockholders and issued the same license number to the corporation it had had under the original and all intervening transferors." It is argued it follows that a new license was issued to petitioner corporation at that time and it cannot be charged with violations which occurred before that. There is no evidence in the record to support the assertions of petitioner. The hearing officer stated at the hearing that "the license has never been transferred to Mr. Newman. It is still in the corporate name." Counsel for petitioner then said he was moving to strike all testimony pertaining to arrests which occurred more than one year prior to the filing of the accusation on the ground, among others, of "the transfer to Mr. Newman of the stock in the corporation."[3] There is no evidence that Max Newman reported the purchase of the stock to the board or that any fingerprints were taken or that a new license was issued. Petitioner relies on section 23961 of the Business and Professions Code which provided that all applications for a transfer of a license shall be referred to the state liquor administrator and by him investigated and reported on to the board.[4] A licensee is any person holding a license. (Bus.

---

[3]Counsel for petitioner here did not represent it before the hearing officer.

[4]Section 23961 read: "All applications for an alcoholic beverage license or for a transfer of such license shall be immediately referred to the State Liquor Administrator for investigation and report. The State Liquor Administrator shall cause a complete investigation to be

& Prof. Code, § 23009.) A corporation is included in the word "person." (Bus. & Prof. Code, § 23008.) A corporation applicant must state in its application the names of its principal officers and directors. (Bus. & Prof. Code, § 23951.) An application of a corporation must be signed by an officer under its seal. (Bus. & Prof. Code, § 23953.) A corporation is treated as a distinct entity. When a license is issued to a corporation it retains and is responsible for it until it is suspended or revoked. The transfer of the stock of a corporation does not result in the transfer of the license from the corporation to the transferee of the stock. The mere transfer of the stock of a corporate licensee cannot be used as a device to enable the licensee to escape responsibility for its violations of the Alcoholic Beverage Control Act. (*Cf. Coletti* v. *State Board of Equalization,* 94 Cal.App.2d 61 [209 P.2d 984].) Petitioner at all times held license Number P-3688-H; not one license prior to December 27, 1951, and another thereafter. The board found continuance of license Number P-3688-H would be contrary to public welfare and morals; not some other license.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied June 27, 1956, and appellant's petition for a hearing by the Supreme Court was denied August 1, 1956.

---

made of the applicant and the premises to determine whether they qualify under this division and whether the provisions of this division have been complied with, and he shall investigate all matters connected therewith which may affect the public welfare and morals. He shall report the result of his investigations to the board."

Prior to 1953 section 23961 was section 21.1 of the Alcoholic Beverage Control Act. (2 Deering's Gen. Laws, Act 3796; Stats. 1945, ch. 1401, p. 2633, § 13.1.)

Section 23961 was repealed in 1955. (Stats. 1955, ch. 447, p. 911, § 63.) Subject matter now covered by § 23958.