271 Cal.App.2d 589 (1969)
76 Cal. Rptr. 749
H.D. WALLACE & ASSOCIATES, INC., et al., Petitioners,
v.
DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Respondents.
Docket No. 12163.
Court of Appeals of California, Third District.
April 9, 1969.
*590 Zarick & Zarick, Robert A. Zarick and Leonard P. Burke for Petitioners.
Thomas C. Lynch, Attorney General, Robert J. Sullivan and John Robert Burton, Deputy Attorneys General, for Respondents.
FRIEDMAN, Acting P.J.
Petitioner H.D. Wallace and Associates, Inc., is the corporate holder of an on-sale general liquor license issued for a bar in Sacramento County. Petitioner William H. Hughes, Jr., is its president and only shareholder. The Alcoholic Beverage Control Appeals Board affirmed a decision of the Department of Alcoholic Beverage Control revoking the corporate license but staying the revocation for six months on condition that Mr. Hughes divest himself of ownership of the business and not be employed there in any managerial capacity. This court issued a writ of review and stay order.
At the time the corporation was licensed in 1963, the department was aware that between 1958 and 1961 Mr. Hughes had been convicted four or five times of being drunk in public, twice of misdemeanor drunk driving and twice of *591 being drunk in or about an automobile. In 1964 and 1965 after the license had issued, Mr. Hughes was convicted once of misdemeanor drunk driving and twice of driving with a suspended license. Because of this expanded record of offenses the department conditionally revoked the corporate license in January 1966, but that revocation was permanently stayed when Mr. Hughes successfully completed a one-year probationary period in January 1967. In August 1967 he was again convicted of misdemeanor drunk driving and driving with a suspended license. The present accusation ensued.
The department found that Mr. Hughes' "... overall arrest record ... involving the intemperate use of alcoholic beverages, and growing out of arrests for public intoxication, being drunk in or about an automobile, misdemeanor drunk driving, and driving with suspended licenses ... demonstrated that he is not a fit and proper person to hold an alcoholic beverage license." The department then found that continuation of the license would be contrary to public welfare and morals within the meaning of article XX, section 22 of the state Constitution and section 24200, subdivision (a), of the Business and Professions Code. It found insufficient evidence that any of Mr. Hughes' offenses involved moral turpitude.[1] In its opinion affirming the department, the Appeals Board observed that Mr. Hughes had "presented impressive evidence as to the reputation of the licensed premises and his conduct in relation thereto."
Article XX, section 22, of the state Constitution empowers the Department of Alcoholic Beverage Control "in its discretion" to suspend or revoke a license if it determines "for good cause" that its continuation would be contrary to public welfare or morals. The Constitution authorizes similar action when the license holder has violated "any law prohibiting conduct involving moral turpitude." These constitutional delegations of power are restated, in slightly varied terms, by the Alcoholic Beverage Control Act, Business and Professions Code, section 24200. [1a] Although the department has discretion to determine whether continuance of a license *592 would be contrary to public welfare or morals, the constitutional demand for good cause necessarily implies that its decision be based upon sufficient evidence and that it avoid arbitrariness. (Stoumen v. Reilly, 37 Cal.2d 713, 717 [234 P.2d 969]; see also, Martin v. Alcoholic Beverage etc. Appeals Board, 55 Cal.2d 867, 876 [13 Cal. Rptr. 513, 362 P.2d 337].)
[2a] The California decisions reviewing the public welfare or morals disqualification describe two general kinds of misbehavior or breach: first, that which occurs on the licensed premises or affects the business conducted there;[2] second, that which reveals lack of personal fitness of the person controlling the license.[3] There is no departmental finding that Mr. Hughes' bar business has been conducted in any but an acceptable manner. Indeed the Appeals Board decision takes note of "impressive evidence" as to the conduct of the business. The case, consequently, is in the category of those dealing with the licensee's lack of personal fitness.
Touching the licensee's personal fitness, both Constitution and statute declare an initial disqualification: violation of a law involivng moral turpitude. The department contends that the moral turpitude provision in no way limits the broad scope of its power to terminate licenses under the public welfare and morals clause. Cited in the Attorney General's brief or the Appeals Board opinion are decisions such as Jacques, Inc. and Ciro's of San Francisco (footnote 3), sustaining disciplinary action for criminal conduct away from the licensed premises and not shown to affect it. Respondents also refer to dicta describing the department's supposed power to "supervise" liquor licensees and their "good moral character." (See, Martin v. Alcoholic Beverage etc. Appeals Board, 52 Cal.2d 287, 293 [341 P.2d 296]; Jack P. Meyers, Inc. v. Alcoholic Beverage etc. Appeals Board, supra, 238 Cal. App.2d *593 at pp. 874-875; Jacques, Inc. v. State Board of Equalization, supra, 155 Cal. App.2d at pp. 462-463.)
The very existence of the moral turpitude standard marks a differentiation between offenses involving moral turpitude and those which do not. If the public welfare and morals clause endowed the department with unlimited power to revoke for lesser offenses, the moral turpitude provision would lack all substance. To the contrary, all clauses of this constitutional provision must be given effect and construed to avoid internal conflict. (Hammond v. McDonald, 49 Cal. App.2d 671, 683 [122 P.2d 332]; see 11 Cal.Jur.2d 354, Constitutional Law, § 41.) The moral turpitude provision is absolute, permitting license termination for an offense coming within its terms regardless of its effect upon the conduct of the licensed business. (See Mercurio v. Department of Alcoholic etc. Control, 144 Cal. App.2d 626, 633 [301 P.2d 474].) [1b] Properly construed, the public welfare and morals clause permits license termination for law violations not involving moral turpitude but having a rational relationship with the operation of the licensed business in a manner consistent with public welfare and morals. (See, e.g., Macfarlane v. Department of Alcoholic Beverage Control, 51 Cal.2d 84 [330 P.2d 769]; Cornell v. Reilly, 127 Cal. App.2d 178 [273 P.2d 572].) So construed, both provisions receive their maximum scope, neither clashing with the other.
Both the Jacques and Ciro's decisions are attributable to the courts' view that the character of the offenses  lewd shows and illegal gambling in the former instance, narcotics violations in the latter  bore a reasonably close potential for similar conduct involving the licensed premises. As for the dicta implying a general power of moral inquiry and supervision over the personal conduct of liquor licensees, it is enough to say that these dicta were appropriate to the facts at hand but overly broad when divorced from the context in which they were uttered.
[2b] In this case the department apparently believed that Mr. Hughes' past conduct might raise a future problem. The net effect was revocation of the license upon conjecture or speculation. There was no evidence that his convictions for insobriety on and off the highway had an actual effect upon the conduct of the licensed business, nor was there any rational relationship between his offenses and the operation of the licensed business in a manner consistent with public welfare *594 and morals. Since there was no substantial evidence that continuation of the license would be contrary to the public welfare or morals, good cause for the revocation was lacking.
The proceeding is remanded to the department with a direction to set aside its order of revocation.
Regan, J., and Janes, J., concurred.
Respondents' petition for a hearing by the Supreme Court was denied June 4, 1969. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.
NOTES
[1] One of the convictions shown in the departmental records of Mr. Hughes' history is accompanied by a puzzling reference to "attempt to bribe an officer." The charges on that occasion consisted only of two Vehicle Code violations, none of violating the Penal Code provisions covering bribery. As noted above, the department specifically found no conviction involving moral turpitude.
[2] See, e.g., Munson v. Department of Alcoholic Beverage Control, 248 Cal. App.2d 598 [56 Cal. Rptr. 805] (prostitution solicitation); Harris v. Alcoholic Beverage Control Appeals Board, 212 Cal. App.2d 106 [28 Cal. Rptr. 74] (disorderly house); Morell v. Department of Alcoholic Beverage Control, 204 Cal. App.2d 504 [22 Cal. Rptr. 405] (disorderly house); Mack v. Department of Alcoholic Beverage Control, 178 Cal. App.2d 149 [2 Cal. Rptr. 629] (gambling); Greenblatt v. Martin, 177 Cal. App.2d 738 [2 Cal. Rptr. 508] (B-girls).
[3] Jack P. Meyers, Inc. v. Alcoholic Beverage etc. Appeals Board, 238 Cal. App.2d 869 [48 Cal. Rptr. 259] (robbery conviction); Jacques, Inc. v. State Board of Equalization, 155 Cal. App.2d 448 [318 P.2d 6] (off-premises lewd shows and conduct of gambling); Ciro's of San Francisco v. State Board of Equalization, 142 Cal. App.2d 636 [299 P.2d 703] (prior narcotics convictions).