[Civ. No. 18127.   First Dist., Div. Two.   Oct. 27, 1958.]

GEORGE KARIDES et al., Appellants, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Respondent.

Harold W. Tobin for Appellants.

Edmund G. Brown, Attorney General, and Charles A. Barrett, Deputy Attorney General, for Respondent.

MARTINELLI, J. pro tem.*—The Department of Alcoholic Beverage Control revoked the general on-sale liquor license of petitioners and the appeals board affirmed. This is an appeal from the judgment of the superior court denying a petition for a writ of mandate by which appellants sought to set aside the license revocation.

An accusation consisting of four counts was filed by respondent. This appeal concerns only the second count which alleged that on or about February 16, 1956, the appellant licensees, by their bartender employee, permitted one, Genevieve Gallagher, to solicit or encourage one John Jaeger to buy her drinks under a profit sharing plan, scheme or conspiracy.

On June 4, 1956, a hearing was held and the evidence there presented showed that on February 16, 1956, one Harry Knust, a liquor agent, observed John Jaeger being helped into appellants' establishment by Genevieve Gallagher. They sat at the bar and the girl ordered a "double shot." The bartender poured her a drink from a Coca Cola bottle. Jaeger laid his wallet on the bar and the girl took a dollar bill from the wallet and paid for the drink. A short time later the girl ordered another "double shot" for herself and a "single shot" for Jaeger. The bartender again poured a drink for the girl from the Coca Cola bottle and he poured the drink for Jaeger from a whiskey bottle. Again the girl

*Assigned by Chairman of Judicial Council.

took money from Jaeger's wallet, this time a 20-dollar bill. She folded the bill and handed it to the bartender with the remark "This is a ten." The bartender responded "Yes, this is a ten," and returned $8.50 to the bar. From this change the girl took five dollars and handed it to the bartender saying "Here, this is the five dollars I owe you." This money was placed in the cash register.

Shortly thereafter Genevieve Gallagher walked to the end of the bar and said to the bartender "I've had all of this I can take; give me my eleven dollars and I want to go." The bartender removed $11 from the cash register and handed it to her.

Marie Moraitis, one of the licensees, testified that she was not in the bar on the night of February 16, 1956. The colicensee, Karides, testified that he knew nothing of these occurrences until the next day. He stated that the bartender worked two times a week and had been instructed to be very polite with the patrons and not to permit anyone to solicit drinks.

Appellants complain that the finding of a violation of Business and Professions Code, section 24200.5, subdivision (b), was not supported by substantial evidence. Section 24200.5 provides:

"Notwithstanding the provisions of Section 24200, the department shall revoke a license upon any of the following grounds:

"(a) If a retail licensee has *knowingly* permitted the illegal sale of narcotics upon his licensed premises. Successive sales . . . over any continuous period of time shall be deemed evidence of such permission.

"(b) If the licensee has employed or *permitted* any person to *solicit or encourage others, directly or indirectly,* to buy them drinks in the licensed premises under any commission, percentage, salary or other profit-sharing plan, scheme or conspiracy." (Emphasis added.)

The testimony that Genevieve Gallagher twice ordered a "double shot" from the bartender, received Coca Cola and was charged a dollar for each "double shot" which she paid for with money taken from Jaeger's wallet indicates a plan or conspiracy between the girl and the bartender. The $10 obtained from Jaeger also appeared to be the result of the concerted action of the two. The bartender when handed the $20 stated "Yes, this is a ten." Further evidence of a profit-sharing scheme or conspiracy is indicated by the testimony that Genevieve Gallagher went to the end of the bar

and stated to the bartender "I have had all of this I can take; give me my eleven dollars and I want to go." The bartender removed $11 from the cash register and gave it to the girl.

This would appear to be ample evidence to support a finding of solicitation "under any commission, percentage, salary or other profit-sharing plan, scheme or conspiracy."

Appellants argue that since the girl ordered her own and Jaeger's drinks she therefore did not solicit or encourage Jaeger to buy any drinks. *Aetna Bldg. Maintenance Co.* v. *West*, 39 Cal.2d 198, 203 [246 P.2d 11], is cited for its definition of the word "solicit" but that definition does not aid appellants because section 24200.5 was not involved. That section's application is not limited to soliciting but includes the words "or encourage others, directly or indirectly." To order a drink and to take money from another's wallet to pay for it would certainly seem to be an act of solicitation or encouragement within the meaning of the code section.

The scope of review of this court is limited to ascertaining whether or not there is substantial support for the decision under review and all legitimate and reasonable inferences must be indulged in its support. (*Oxman* v. *Department of Alcoholic etc. Control*, 153 Cal.App.2d 740, 744 [315 P.2d 484]; *Marcucci* v. *Board of Equalization*, 138 Cal.App.2d 605, 608 [292 P.2d 264].) It is clear that there is such support here.

Appellants also contend that a violation of section 24200.5, subdivision (b), cannot be established by proof of an isolated act of an agent acting outside the scope of his employment without the knowledge or the express or implied authorization of the licensee.

In *Mantzoros* v. *State Board of Equalization*, 87 Cal.App.2d 140 [196 P.2d 657], this court held that the licensees could be held liable for the action of their employee in making a sale after hours even though it was not shown that the sale was known to or directed or authorized by the licensees. "The licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license, else we would have the absurd result that liquor could be sold by employees at forbidden hours in licensed premises and the licensees would be immune to disciplinary action by the board." (87 Cal. App.2d 144.)

Appellants seek to distinguish the instant case from the Mantzoros case. In the Mantzoros case the employee making

a sale of liquor at an hour forbidden by the Alcoholic Beverage Control Act was doing an act within the scope of his employment. It is argued that other cases supporting license revocation involve unlawful acts of an employee beyond the scope of employment but done with express or implied knowledge of the licensee (*Endo* v. *State Board of Equalization*, 143 Cal.App.2d 395 [300 P.2d 366]; *Mercurio* v. *Department of Alcoholic etc. Control*, 144 Cal.App.2d 626 [301 P.2d 474]); or unlawful acts of an employee beyond the scope of employment done without knowledge of the licensee but allowed to occur because of his negligence (*Swegle* v. *State Board of Equalization*, 125 Cal.App.2d 432 [270 P.2d 518]). The instant case is different, appellants contend, because not only was the violative act not within the scope of employment and without knowledge, consent or negligence on their part, but it was committed contrary to their instructions.

This attempted distinction is not very persuasive. In *Cooper* v. *State Board of Equalization*, 137 Cal.App.2d 672 [290 P.2d 914], it was contended that the statutes involved required that the accused licensees could not be held responsible unless they personally hired or permitted the solicitation. The court stated: "The cases are uniform in holding that a licensed employer may be disciplined to the extent of revocation of his license for acts of his employees." (P. 678.) In *Cornell* v. *Reilly*, 127 Cal.App.2d 178 [273 P.2d 572], it was contended that since the evidence showed that the agent of the licensee hired the girls to solicit drinks, it was necessary to show that the licensee knew of or directed the hiring before his license could be revoked. The court rejected this contention and stated that "[b]y virtue of the ownership of a liquor license such owner has a responsibility to see to it that the license is not used in violation of law." (P. 187.) This principle has been repeatedly upheld by the California courts. (*Cf. Swegle* v. *State Board of Equalization*, 125 Cal.App.2d 432, 438 [270 P.2d 518]; *Maxwell Café* v. *Department Alcoholic etc. Control*, 142 Cal.App.2d 73, 76 [298 P.2d 64]; *Endo* v. *State Board of Equalization*, 143 Cal.App.2d 395, 402 [300 P.2d 366]; *Mercurio* v. *Department of Alcoholic etc. Control*, 144 Cal.App.2d 626, 630-631 [301 P.2d 474]; *Oxman* v. *Department of Alcoholic etc. Control*, 153 Cal.App.2d 740, 751 [315 P.2d 484]. *Munro* v. *Alcoholic etc. Appeals Board*, 154 Cal. App.2d 326, 329 [316 P.2d 401].) To hold the appellants liable does not extend the principle of liability set forth in the Mantzoros case.

■ Appellants argue that section 24200.5, subdivision (b), must be construed to mean that a licensee cannot be charged with a single isolated act of an employee unless there was knowledge, express or implied. In subdivision (a) of this section there is the requirement that the licensee must *knowingly* permit illegal sale of narcotics in order to justify a mandatory revocation. Subdivision (a) also states that "[s]uccessive sales over any continuous period of time shall be deemed evidence of such permission." Subdivision (b) should not be construed to be more restrictive than subdivision (a), appellants argue, without citing any authority.

In subdivision (b) the word "knowingly" is not used and respondent contends that this indicates that the Legislature intended that there should be no requirement of actual knowledge. This interpretation of subdivision (b) would seem to conform with the California court's interpretation of other liquor license statutes.

In *Mercurio* v. *Department Alcoholic etc. Control,* 144 Cal. App.2d 626 [301 P.2d 474], appellants were charged with *knowingly* permitting waitresses to accept alcoholic beverages. The findings merely stated that appellants permitted such to be done, omitting the word "knowingly" so it was necessary for the court to determine whether knowledge was a necessary element. It was held that in neither section 24200 of the Business and Professions Code nor rule 143 of the State Board of Equalization was there any requirement that the permitting be knowingly done. The court cited *Endo* v. *State Board of Equalization,* 143 Cal.App.2d 395 [300 P.2d 366], dealing with section 24200.5, subdivision (a), and stated: "The very fact that rules and laws providing for violations for which disciplinary action may be taken, provide that some violations must be 'knowingly' done and as to others the word 'knowingly' is omitted, indicates that in the latter cases there is no requirement that the violations be knowing ones." (*Mercurio* v. *Department of Alcoholic etc. Control,* 144 Cal. App.2d 626, 630-631 [301 P.2d 474].) This statement of interpretation would seem to be more particularly applicable in determining the legislative intent as to subdivisions of the same section.

At the time section 24200.5 was enacted the Legislature presumably had knowledge of existing California judicial decisions interpreting other liquor license provisions and holding that whatever is permitted by the employee of the licensee is attributed to the licensee. (*Cf. Buckley* v. *Chadwick,*

45 Cal.2d 183, 200 [288 P.2d 12, 289 P.2d 242], presumed knowledge of Legislature of domestic judicial decisions.)

In providing that a license shall be revoked "[i]f the licensee has employed or permitted any person to solicit or encourage others . . . to buy them drinks . . ." it would not seem that the Legislature intended that the permitting be "knowingly" done and the bartender's act in the instant case could be attributed to appellants.

The judgment denying the petition for writ of mandate is affirmed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied November 26, 1958, and appellants' petition for a hearing by the Supreme Court was denied December 23, 1958. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.