[Civ. No. 24000. Second Dist., Div. Two. Feb. 18, 1960.]

HENRY G. MACK et al., Appellants, v. DEPARTMENT OF
ALCOHOLIC BEVERAGE CONTROL, Respondent.

Paul Pearlin for Appellants.

Stanley Mosk, Attorney General, and Warren H. Deering, Deputy Attorney General, for Respondent.

FOX, P. J.—This is an appeal from a judgment in favor of respondent Department of Alcoholic Beverage Control (hereinafter referred to as the Department) and denying appellants' petition for writ of mandate.

Appellants are the owners of a general on-sale liquor license at their premises, "The Blue Chip Café," 14087 South Vermont Avenue, Gardena, California. On May 2, 1957, the Department served an accusation upon appellants charging them with a violation of article XX, section 22, of the California Constitution[1] and of section 24200, subdivision (a) of the Business and Professions Code.[2] The accusation was in three counts. Count I alleges that on or about October 3, 1956, the appellants "did cause, suffer and permit, and by their bartender, Leonard Stanley Mackie did cause, suffer and permit" their premises to be used as a place in which bookmaking activities were carried on, "thereby creating, allowing and suffering a condition to exist thereat inimical to public welfare" and that the bartender Mackie was found guilty of bookmaking on January 31, 1957. Count II alleges that appellants did "cause, suffer and permit and by their bartender Leonard Stanley Mackie did cause, suffer and permit," the premises to be used for the purposes of wagering upon the action of two mechanical contrivances. Count III was dismissed. On October 10, 1957, the Department adopted the hearing officer's proposed decision rendered after a hearing

---

[1]Article XX, section 22 of the California Constitution, provides, *inter alia*:

"The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals."

[2]Section 24200 of the Business and Professions Code states: "The following are the grounds which constitute a basis for the suspension or the revocation of licenses: (a) When the continuance of a license would be contrary to public welfare or morals; but proceedings under this section upon this ground are not a limitation upon the department's authority to proceed under Article XX, Section 22, of the Constitution."

on July 29, 1957. The hearing officer made the following findings of fact, determination of issues and recommendations:

"Findings of Fact: Count I—It is true that on October 3, 1956, respondent licensees did cause, suffer and permit their licensed premises to be used as a place at which persons did make, place and wager, bets of lawful money upon the results of horse races in that respondents' bartender, Leonard Stanley Mackie, *with the knowledge of respondents*, did receive such bets placed by customers in the licensed premises, all of which was contrary to public welfare and morals. Count II—It is true that on October 3, 1956, respondent licensees did cause, suffer and permit their licensed premises to be used as a place at which persons did wager, hazard, gamble and deposit lawful money upon the action of mechanical contrivances in that they did *by their bartender* suffer and permit customers upon their licensed premises to operate mechanical contrivances known as a Magic Bowling game and a Bally Big Time pinball machine and pay to them lawful money of the United States upon specified results of such operation." (Emphasis added.)

"Determination of issues presented: Grounds exist for the revocation or suspension of respondents' license under the provisions of Section 24200 (a), Alcoholic Beverage Control Act, and under the provisions of Article XX, Section 22, California Constitution under Count I and Count II. . . ."

"Penalty or recommendation: Count I, the license is revoked; Count II, the license is suspended for 15 days."

After the adoption by the Department of this decision, appellants filed an appeal with the Alcoholic Beverage Appeals Board which considered the matter and affirmed the decision of the Department. Thereafter, appellants' petition for writ of mandate to compel the Department to set aside its decision was denied and judgment was entered in favor of the Department. Appellants have appealed from that judgment.

In seeking a reversal appellants urge two grounds: (1) that the findings are not supported by the evidence, and (2) that the decision is not supported by the findings. On the first question, appellants' principal contention is that the evidence is insufficient to show that they had knowledge of the book-making and gambling activities of their bartender, Mackie.

Viewing the evidence, as we must on appeal, in the light most favorable to the respondents, the record reveals the following with respect to the activities of appellants and their bartender, Mackie, on October 3, 1956: Deputy Sheriffs Sennewald and Keesling entered the Blue Chip Café on that after-

noon and conducted an undercover investigation. Both Mackie and appellant Sobotnik were on the premises but there is no evidence that appellant Mack was present. Deputy Keesling played a Magic Bowling game and was paid ten cents by Mackie for a winning combination which came up on the machine. Later, Keesling won one dollar playing the Bally Big Time pinball machine, which was also paid to him by Mackie. Appellant Sobotnik was seated about 10 feet away during this transaction. During the early part of the investigation, Keesling observed two unidentified people who looked at a newspaper and then handed Mackie some money which he put in his pocket. He also observed Mackie go to the telephone several times. Deputy Sennewald overheard a customer in conversation with Mackie, the substance of which was that the customer had two dollars and wanted to make a bet, to which Mackie replied that he would take it. Later, Sennewald observed another customer engage in a similar transaction with Mackie. During this period, appellant Sobotnik moved freely about the bar and was seated about 5 feet from one of the above mentioned customers when the wager was made. Sennewald attempted to place a bet with Mackie and when Mackie refused, Sennewald threatened to call the police and Mackie chased him out of the bar. Sennewald then telephoned the bar and talked to Mackie, apologizing for threatening to call the police and asked if he might return. Mackie replied, ''Wait a minute, I will talk to Harry.'' After a brief pause Mackie came back on the 'phone and said ''. . . come on back in, but we don't want any trouble here and we don't want the police to know.'' At about 4:40 p.m., both Sennewald and Keesling overheard a customer named Herrera say to Mackie, ''I want to bet $2 to place on Scrappy Darling in the 8th race at Golden Gate.'' Herrera handed two dollars to Mackie which Mackie placed in his pocket. The deputies then arrested both Herrera and Mackie. This evidence clearly supports the finding of the hearing officer that appellants had knowledge—actual or at least imputed—of the bookmaking activities being conducted on their premises and that such activities were in fact being conducted by Mackie. It also supports the finding with respect to the other gambling activities charged in Count II.

A continuous line of California cases has held that a liquor licensee may be disciplined by the licensing authority for the unlawful acts of employees while engaged in the conduct and operation of the business, even though the employer did not authorize them and did not have actual knowl-

edge of the activities. In *Mantzoros* v. *State Board of Equalization,* 87 Cal.App.2d 140 [196 P.2d 657], the court, in affirming penalties imposed on the licensees because of illegal sales of alcoholic beverages made by their employees, stated the following rule (p. 144) : ''The licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license, else we would have the absurd result that liquor could be sold by employees at forbidden hours in licensed premises and the licensees would be immune to disciplinary action by the board.''

We recently held, in *Fromberg* v. *Department of Alcoholic Beverage Control,* 169 Cal.App.2d 230 [337 P.2d 123], that a liquor licensee had imputed knowledge of the sales of narcotics carried on by his employees even though there was no evidence that the licensee had actual knowledge. We said (p. 233), ''as a matter of general law the knowledge of an employee acquired during the transaction of his employer's business is imputed to the latter with the same effect as if he had actually participated in the transaction.'' In *Endo* v. *State Board of Equalization,* 143 Cal.App.2d 395 [300 P.2d 366], after upholding the presumption declared in section 24200.5, subdivision (a), Business and Professions Code,[3] as an alternative ground for its decision that the license was properly revoked, the court held at page 234: ''. . . appellant as owner and operator of the bar and as licensee is responsible for the acts of her bartender who 'knowingly permitted' the illegal sale by conducting them himself. His knowledge and permission are imputable to appellant as his employer (the owner, operator and licensee) within the scope of the principle that a 'licensed employer may be disciplined to the extent of revocation of his license for the acts of his employees.' '' In *Maxwell Cafe* v. *Department of Alcoholic Beverage Control,* 142 Cal.App.2d 73, 76 [298 P.2d 64], the court said: ''Whatever is suffered or permitted by the agent and employees of a licensee is attributed to the licensee. The owner of a liquor license has the responsibility to see to it the license is not used

---

[3]Bus. & Prof. Code, section 24200.5, subd. (a), provides:

''Notwithstanding the provisions of section 24200, the department shall revoke a license upon any of the following grounds: (a) If a retail licensee has knowingly permitted the illegal sale, or negotiations for such sale, of narcotics upon his licensed premises. Successive sales, or negotiations for such sales, over any continuous period of time shall be deemed evidence of such permission.''

in violation of law." (See also *Nelson* v. *Department of Alcoholic Beverage Control,* 166 Cal.App.2d 783, 786 [333 P.2d 771]; *Karides* v. *Department of Alcoholic Beverage Control,* 164 Cal.App.2d 549, 555 [331 P.2d 145].)

It is therefore immaterial that appellants may have had no actual knowledge of the illegal gambling activities on their licensed premises. The evidence discloses unmistakable proof of the illegal activity of Mackie, their agent and employee. His knowledge became their knowledge and the responsibility for his acts became their responsibility, as far as their right to retain their license to sell intoxicants is concerned. Since they had knowledge of the illegal acts, the finding of the hearing officer that they "caused, suffered and permitted" their premises to be so used, was amply supported by the evidence.

We come now to a consideration of appellant's second contention: That the decision is not supported by the findings. In this regard, appellants cite several decisions from other jurisdictions which hold, in varying degrees, that a liquor license may not be suspended or revoked because of occasional or isolated acts of the licensee's employees. Whatever may be the rule in other jurisdictions, the California rule is settled that the single act of an employee of a licensee is sufficient to impose sanctions upon the licensee. In *Mantzoros* v. *State Board of Equalization, supra,* disciplinary action by the board was upheld where the offense consisted of a single act of selling liquor at a prohibited hour, committed by the licensee's employee. And in *Karides* v. *Department of Alcoholic Beverage Control, supra,* where a single violation of section 24200 subdivision (b) was committed by the licensee's employee, the court upheld the department's decision revoking the license. While no case involving a single act of bookmaking by a licensee's employee has been decided in California, we can see no valid reason for making any distinction between such activity and the violations charged in the Mantzoros and Karides cases, even though those cases involved violations of specific statutory prohibitions. Bookmaking and gambling, though not specifically set out either in article XX, section 22 of the California Constitution or in section 24200 (subds. a-f) of the Business and Professions Code as grounds for suspension or revocation of a license, are nevertheless offenses long recognized by the courts of this state as constituting such grounds within the meaning of the Constitution. (*MacFarlane* v. *Department of Alcoholic Beverage Control,* 51 Cal.2d 84

[330 P.2d 769] ; *Maloney* v. *Department of Alcoholic Beverage Control,* 172 Cal.App.2d 104 [342 P.2d 520] ; *Jacques, Inc.* v. *State Board of Equalization,* 155 Cal.App.2d 448 [318 P.2d 6].) The Supreme Court, in the *MacFarlane* case, *supra,* quoting from the department's findings, said: " 'That the *taking of unlawful bets on horse races in premises licensed for the sale of alcoholic beverages* and the taking of such bets by persons licensed to sell alcoholic beverages *are both* contrary to public welfare and morals.' " (Emphasis added.) In view of these authorities, it is clear that bookmaking and other forms of gambling on premises licensed for the sale of intoxicants constitute conditions which are contrary to public welfare and morals and are thus grounds for discipline under article XX, section 22 of the California Constitution. Since, as we have already pointed out, the evidence clearly establishes that the licensees had, at the very minimum, constructive or imputed knowledge of the illegal gambling and bookmaking activities of their bartender on October 3, 1956, the findings that they suffered or permitted such activities are adequately supported. That such sufferance or permitting of illegal gambling constitutes grounds for revocation or suspension of their privilege to sell alcoholic beverages cannot be doubted. Thus the findings of the hearing officer, which were adopted by the department, fully support the decision of that agency.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.