WARNS, J. pro tem.
 
 *
 

 An accusation was filed with the Department of Alcoholic Beverage Control, charging Anthony Presto and James Presto, doing business as the 49 Club (situated at 824 9th Street, Modesto, California), the possessors of a general on-sale liquor license, with having violated sections 25601 and 25657, subdivision (b), as those sections relate to section 24200, all of the Business and Professions Code, and article XX, section 22, of the California Constitution. The accusation is in four counts. Count I charged a violation of section 25601, in that appellants permitted their premises to be used as a house of assignation and permitted known prostitutes to enter and remain upon the premises and there to solicit acts of prostitution. In that connection, it is charged that Effie Riley, a prostitute, did, on or about February 2, 1957, solicit an act of prostitution on said premises. Count II also charges that on February 2, 1957, one Mavis Choate Simpson, solicited an act of prostitution on the licensed premises. Count III charges that appellants did knowingly permit Effie Riley to enter in' or about the licensed premises for the purpose of begging or soliciting patrons, customers or visitors to purchase alcoholic beverages for her and Count IV charges that on January 27, February 1 and February 2,1957, the appellants did permit patrons and their bartender, Frank Hunter, to use obscene language which was audible to other patrons on the premises.
 

 After a hearing upon these accusations the Department of Alcoholic Beverage Control, hereinafter referred to as the department, rendered its decision finding all charges to be true except as to Count IV the department limited the charge only to February 2, 1957. It ordered appellants’ license revoked as to Counts I and II, suspended for 30 days on Count III and suspended for 15 days on Count IV. The Alcoholic Beverage Control Appeals Board affirmed the department’s decision. The appellants then sought a writ of mandate in the superior court. That court affirmed the decision of the department and denied a peremptory writ of mandate. Appellants have appealed from the judgment of the superior court.
 

 In seeking a reversal appellants urge first that the evidence
 
 *264
 
 is insufficient to support the findings as to Counts I and II, their principal contention being that there was no showing in the record that the licensees or their bartender allowed or consented to any of the acts charged in those counts or that Effie Riley and Mavis Choate Simpson were “known” prostitutes.
 

 Viewing the evidence, as we must on appeal, in the light most favorable to the respondents, the record reveals that Lou Schmitt and one Martin Hussey, agents for the department, were patrons at the licensed premises on February 2, 1957, at approximately 12:30 p.m. Schmitt testified that he was sitting at the bar along with several other patrons and the bartender asked him if he had met his friend, whom he called “T.P.” Schmitt said he had not. “T.P.” and the bartender then entered into, suffice it to say, an obscene, vulgar and immoral conversation audible to other patrons, who in fact joined in the discussion. Shortly thereafter Effie Riley entered and seated herself at the bar to Schmitt’s right. Schmitt testified that the following events then occurred: “A. As Effie Riley was to my right Frank Hunter, the bartender, approached her and said, ‘Good evening, Smorgasbord.’ With that he turned to me and said, ‘ The reason we call her Smorgasbord there’s [we refrain from repeating the reason given, it being vile, vulgar and obscene]. At that time she turned to me and asked me to buy her a drink. I asked Mr. Hunter to serve her a drink and he did. Following that, she had, as I recall, two more which I paid for. At about that time she asked me if I would be interested in ‘turning a little trick’ with her. I said that I didn’t know, I might. I asked her how much it would cost and where we would have to go, and at that time she stated that the ‘trick’ would be five dollars and that we would go to her house, that I would pay for the taxicab, and it would cost $1.50 to go there. Following this conversation she got off the stool and went to the restroom located in the rear of the premises. When she 'did Frank came up to me-Q. Just a minute. You mentioned that a drink was purchased. What was the drink involved? A. Beer.” After Effie Riley left for the restroom the following conversation took place between Schmitt and Hunter: “A. Yes. Frank Hunter came up to me and asked how I made out. I told him at that time that she had propositioned me for a ‘trick’ for five dollars but I didn’t have very much money with me and that I might have to see her at a later date. At that time Mr. Hunter told me that if that’s all that was holding me back
 
 *265
 
 that he would arrange with her for some credit on it, and I could pay her the balance the following evening. That was the extent of the conversation with Mr. Hunter.”
 

 Schmitt left the premises shortly thereafter and returned at approximately 11 p.m. the next night. He had another conversation with Hunter, who was on duty. Schmitt asked if there were any other girls around, and Hunter told him to “stick around, that there would be plenty of them.” Hunter then telephoned a girl he called Peggy, and told her that “if she came in he wanted her to come to the bar right away.”
 

 A short time later Mavis Simpson entered the barroom. The bartender called her over and introduced her to Hussey, telling her that Hussey was an old friend of his who was dying to have intercourse with her. Hussey and Miss Simpson left the tavern and went to a hotel room. Schmitt followed them and, entering the room, observed Miss Simpson in a semiclad state.
 

 Agent Hussey corroborated Schmitt’s testimony about the obscene remarks made by Hunter on the morning of February 2d. Hussey testified that upon returning to the bar about 10 p.m. on the evening of February 2d he was approached by Miss Simpson, who asked him to buy her a drink; that he bought her two drinks; and that thereafter another vulgar conversation took place between the bartender and a female patron. Hussey left the establishment and returned again after midnight. At that time Hunter told him that most of the female patrons were prostitutes and related a story about one of them. After this Mavis Simpson solicited Hussey to engage in an act of prostitution, and he left with her for a hotel room, as stated above, followed by Schmitt.
 

 The evidence clearly supports the finding of the hearing officer and the decision of the board that appellants permitted known prostitutes to enter and remain in and upon the licensed premises and there to solicit acts of prostitution, and specifically that Effie Riley and Mavis Simpson did, on February 2, 1957, solicit an agent of the Department of Alcoholic Beverage Control to engage in an act of prostitution while on the premises. It also clearly supports the charges contained in Counts III and IV of the accusation.
 

 The California cases hold that a licensee may be disciplined by the licensing authority for the unlawful acts of the employees while engaged in the conduct and operation of the business even though the employer did not authorize them and did not have actual knowledge of the activities. In
 
 Endo
 
 
 *266
 
 v.
 
 State Board of Equalization,
 
 143 Cal.App.2d 395 [300 P.2d 366], the court said at pages 401-402:
 

 “. . . [A]pellant as owner and operator of the bar and as licensee is responsible for the acts of a bartender who ‘knowingly permitted’ the illegal sales by conducting them himself. His knowledge and permission are imputable to appellant as his employer . . . within the scope of the principle that a ‘licensed employer may be disciplined to the extent of revocation of his license for the acts of his employees.’ ” (See also
 
 Karides
 
 v.
 
 Department of Alcoholic Beverage Control,
 
 164 Cal.App.2d 549 [331 P.2d 145];
 
 Nelson
 
 v.
 
 Department of Alcoholic Beverage Control,
 
 166 Cal.App.2d 783 [333 P.2d 771];
 
 Mach
 
 v.
 
 Department of Alcoholic Beverage Control,
 
 178 Cal.App.2d 149 [2 Cal.Rptr. 629].)
 

 As to Counts I and II the appellants’ bartender not only permitted acts and conduct charged, but aided and abetted them. Hence, since his knowledge and permission are imputed to the employer within the scope of the rule that a licensed employer may be disciplined to the extent of revocation of his license for the acts of his employees, it follows that the department was fully justified in revoking appellants’ license on either of said Counts I or II. When a penalty is imposed on each of several counts in such matter, the court need only find that one of the several counts is sufficient.
 
 (Nelson
 
 v.
 
 Department of Alcoholic Beverage Control, supra.)
 

 Appellants next contend that the conversations between the bartender and the department’s agents, Hussey and Schmitt, constituted hearsay and was therefore not admissible in evidence. There is no merit in this contention. As stated in
 
 People
 
 v.
 
 Henry,
 
 86 Cal.App.2d 785, 789 [195 P.2d 478] : “. . . There is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said or done and not as to whether these things were true or false, and in these cases the words or acts are admissible not as hearsay, but as original evidence. [Citing eases.]”
 

 In
 
 Greenblatt
 
 v.
 
 Munro,
 
 161 Cal.App.2d 596 [326 P.2d 929], the rule of the Henry ease,
 
 supra,
 
 was applied to a Department of Alcoholic Beverage Control ease in which the licensee was disciplined for an employee soliciting alcoholic beverages on licensed premises. In that ease the court, in upholding the admissibility of statements made in connection with the solicitation and purchases of alcoholic beverages from an Alcoholic Beverage Control agent by a female employee,
 
 *267
 
 quoted at pages 601 and 602, from 6 Wigmore on Evidence, 3d ed., pages 177-178:
 

 “. . . 'The theory of the Hearsay rule ... is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extra-judicial utterance is offered, not as an assertion to evidence the matter asserted, but
 
 without reference to the truth of the matter asserted,
 
 the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule. ’ ”
 

 In the instant case the utterances made by the prostitutes constituted one of the facts in issue in order to prove solicitation. Therefore, the trial court properly admitted those utterances in evidence.
 

 Since we have concluded that the judgment revoking appellants’ license must be sustained for the reasons herein-above stated, we deem it unnecessary to further discuss any matters in relation to Counts III and IY.
 

 The judgment is affirmed.
 

 Van Dyke, P. J., and Schottky, J., concurred.
 

 *
 

 Assigned by Chairman of Judicial Council.