[Civ. No. 25425.  Second Dist., Div. One.  Nov. 21, 1961.]

MALCOLM E. HARRIS, as Director of the Department of Alcoholic Beverage Control, Plaintiff and Appellant, v. THE ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Defendant and Respondent; THE ROUNDHOUSE, Real Party in Interest.

Stanley Mosk, Attorney General, and Warren H. Deering, Deputy Attorney General, for Plaintiff and Appellant.

Charles P. Just, Chief Counsel, for Defendant and Respondent.

WOOD, P. J.—The Alcoholic Beverage Control Appeals Board reversed a decision of the Department of Alcoholic Beverage Control. The department petitioned the superior court for a writ of mandate directing the appeals board to vacate its reversal of the department's decision. The petition was denied. The department appeals from the minute order denying the petition.

The Roundhouse, a corporation, which was a licensee under an ''on-sale'' alcoholic beverage license, had been conducting its business in Norwalk since July 1958.

On August 20, 1959, the department filed an accusation against the licensee. The accusation alleged that on August 11, 1959, the licensee permitted its employee, Tom Mastrosimone, to direct Everett McFee and Robert Cobos to a house of prostitution; and that by reason thereof grounds for suspension or revocation of the license exist, and that a continuance of such license would be contrary to public welfare and morals; that the licensee violated or permitted the violation of section 318 of the Penal Code.[1]

A hearing upon the accusation was held on October 29, 1959, before a hearing officer of the department. His proposed decision was, as follows: It is true that on August 11, 1959, the licensee permitted its bartender-employee, Tom Mastrosimone, to direct Everett McFee and Robert Cobos to a house of prostitution, all of which is contrary to public welfare and morals. McFee and Cobos, acting ''under cover'' from the sheriff's office, entered the licensed premises about 12:30 a. m. on said August 11 and engaged Mastrosimone, who was on duty as a bartender, in a conversation about women and prostitutes. During the conversation the bartender took a printed card from his pocket and threw it across the bar toward McFee, and told him to call that number if he was interested in getting a girl, and to say that he knew Tom at the Roundhouse. A name and a telephone number were on the card. The two deputy sheriffs followed the instructions of the bartender and as a result they arrested Evon DeLong and Ann Harris at an address to which they were directed. Although there was no evidence that the two stockholders and officers of the licensee corporation had any knowledge of the transaction, and although neither of those two persons was present on the premises, knowledge of the activity is imputed to them as a matter of law. The evidence indicated this to be a ''one time transaction,'' and there was no indication that such activity had been carried on previously. The bartender stated that someone had given the card to him and he had passed it along as a favor, although he did admit that he had visited the address himself. There was no prior disciplinary action. The licensee violated article XX, section 22, of the Constitution of California, and grounds for suspension or revocation of the license have been established. The hearing officer recommended that the license be suspended for 30 days.

[1]Section 318 of the Penal Code provides: "Whoever . . . prevails upon any person to visit any room, . . . or other places kept for the purpose of gambling or prostitution, is guilty of a misdemeanor. . . ."

The proposed decision of the hearing officer was adopted by the department as its decision.

The licensee appealed from that decision to the appeals board. In reversing the decision of the department, the appeals board stated that "a licensee may not be disciplined for an isolated, single unlawful act of an employee outside the scope of his employment in the absence of evidence that the licensee permitted the activity"; the record discloses only a single act on the premises by the employee; that appellant was charged with having permitted this act and the decision of the department sustains this allegation; in this respect, the summary of the evidence in the department's decision is misleading and not correct chronologically; there is no evidence of permission other than the fact that the single act did occur; and we hold this is insufficient upon which to base a cause for discipline.

The opinion of the appeals board stated that McFee, a deputy sheriff, testified that when he was on the premises on August 11, about 12:30 a. m., he observed a girl there who was wearing tight shorts and was talking to the bartender; in a conversation with the bartender concerning girls, the bartender said that he had nothing to do with any girl on the licensed premises, and if he wanted a woman he would call a certain telephone number; then he tossed a card on the bar and told McFee that was a number he could call; McFee used a public telephone on the licensed premises, called the number which was on the card, and told a woman that he knew Tom at the Roundhouse; McFee went to the place, to which he had telephoned, and made arrangements for an act of prostitution; the bartender was arrested on a charge of violating section 315 of the Penal Code; the testimony of McFee was corroborated by the testimony of deputy sheriff Cobos, who accompanied McFee to the licensed premises and to the house of prostitution; the bartender testified that he, as an employee of the licensee, works from 6 p. m. to 2 a. m. six days a week; he and a waitress were the only employees on the premises during that period of time; on the date in question, he gave the card to McFee knowing that it was a reference to a house of prostitution; the card had been given to him by someone; there was no evidence that he had referred anyone to the place except on this single occasion; Nestor Camero, the president and 50 per cent stockholder of the Roundhouse corporation, testified that he works on the premises from 10 a. m. to 6 p. m.; he had no knowledge of said activity of the

bartender; the bartender is not in charge of the place from 6 p. m. to 2 a. m., but he was instructed to get in touch with Camero if "anything came up"; there was no evidence that any supervision was exercised by Camero during the night shift.

Also in said opinion of the appeals board, two New York cases (N.Y. Supp.) were cited and relied upon by the board —in those cases it was held that one unlawful act of a bartender-employee did not justify disciplining the licensee.

The reporter's transcript of the proceeding before the department shows that Camero, one of the owners of the premises, testified that during the night shift (when Camero was absent) the cocktail waitress and the bartender were the employees who were on the premises. Camero was asked if the bartender was more or less in charge of the place (during the night shift), and he replied: "No, there is the cocktail waitress to watch him, and him to watch the cocktail waitress."

The other coowner of the premises, A. Cacciatore, was engaged in the garment business and did not actively participate in the operation of the premises (The Roundhouse).

The trial court found that the decision of the appeals board was not arbitrary and that it correctly decided the issues in the case.

The appeals board conceded that the record shows that the bartender did engage in said illegal activity (directing patrons to a house of prostitution) on the date alleged. The board contends, however, that such misconduct of the employee was a single and isolated act, which was committed without the knowledge or permission of the licensee and was outside the scope of the employment; and that under such circumstances the licensee may not be disciplined. The board states that the law "imputes" the misconduct of an employee to a licensee in only two situations, namely: (1) where the misconduct is known, or in the exercise of reasonable care could have been known, to the licensee or responsible person in charge; and (2) where the misconduct is within the scope of the employment, such as a sale after hours or a sale to a minor.

The department (appellant) contends that a licensee may be disciplined for an employee's unlawful act committed on the licensed premises; that the findings of fact of the department are supported by substantial evidence in the light of the whole record; that its decision is supported by its findings; and that it was the duty of the appeals board to affirm the department's decision.

The department also contends that the appeals board acted arbitrarily and in disregard of the decisional law of California, and that it acted pursuant to and in reliance upon New York decisions which had been rejected by California courts of review.

In the present case there was evidence that Camero, one of the owners of the premises, worked there during the day shift (from 10 a. m. to 6 p. m.) but he was not there during the night shift (from 6 p. m. to 2 a. m.). The bartender testified to the effect that he was in charge of the bar during the night shift. As above indicated, Camero testified that the waitress and the bartender were the only employees on the premises during the night shift. The other owner, Cacciatore, who conducted a garment business was not present on the licensed premises. Since neither owner was present during the night shift, it is apparent that neither of them was in a position to observe the conduct of their employee, the bartender. According to the testimony of Camero, he relied upon each of the two employees to watch or supervise the work or acts of the other employee. The appeals board argues, as above stated, that a single act of such misconduct as that charged herein would not be sufficient to justify disciplining the licensee, but the board does not indicate how many of such acts of an employee, committed in the absence of the employer, would justify the department in finding that the absent employer should have known of such misconduct, or in finding that the employer was subject to disciplinary action.

▆▆ "The findings of the department on factual issues must be sustained if there is substantial evidence to support them," and "All legitimate and reasonable inferences must be indulged in support of the department's decisions." (*Burako* v. *Munro,* 174 Cal.App.2d 688, 692 [345 P.2d 124].)
▆▆ The appeals board must sustain the department's findings when these findings are supported by substantial evidence in the light of the whole record. (*Martin* v. *Alcoholic Beverage Control Appeals Board,* 52 Cal.2d 238, 246 [340 P.2d 1].) ▆▆ The court may not reweigh the evidence or assess the credibility of witnesses. (*Benedetti* v. *Department of Alcoholic Bev. Control,* 187 Cal.App.2d 213, 216 [9 Cal.Rptr. 525].)

In *Mantzoros* v. *State Board of Equalization,* 87 Cal.App. 2d 140 [196 P.2d 657], the State Board of Equalization suspended a liquor license for the reason an employee of the licensees had sold whiskey on the premises after the prescribed

closing hour. The licensees contended therein that they could not be held liable for the action of their employee in making the sale without their knowledge or authorization. In that case the court said, at page 144: "It is to be noticed that the question in their case is not whether they are criminally liable for their employee's act, a question which we need not decide, but whether they can be subjected to discipline by the Board of Equalization because their employee made a sale of liquor at an hour forbidden by that section. The licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license, else we would have the absurd result that liquor could be sold by employees at forbidden hours in licensed premises and the licensees would be immune to disciplinary action by the board. Such a result cannot have been contemplated by the Legislature. Even in the case of criminal statutes vicarious liability for the acts of employees is not unknown."

In *Karides* v. *Department of Alcoholic Beverage Control*, 164 Cal.App.2d 549 [331 P.2d 145], the Department of Alcoholic Beverage Control revoked a liquor license for the reason the bartender-employee permitted a girl, who was in the premises, to solicit a patron of the bar to buy drinks for her under a profit-sharing scheme. The licensees' petition for a writ of mandate compelling the department to set aside the revocation was denied by the superior court. On appeal from that judgment, the licensees contended that the alleged violation (a certain section of the Bus. & Prof. Code) could not be established by proof of an isolated act of an agent acting outside the scope of his employment without the knowledge or authorization of a licensee. In that case, even though it appeared that the licensees did not have knowledge of the misconduct, and even though they had instructed the bartender not to permit anyone to solicit drinks, the judgment (upholding the revocation of license) was affirmed upon the basis that the licensees had a responsibility to see to it that the license was not used in violation of law. On page 553 of the opinion therein it was said: " 'The cases are uniform in holding that a licensed employer may be disciplined to the extent of revocation of his license for the acts of his employees.' [Citation.] In *Cornell* v. *Reilly*, 127 Cal.App.2d 178 [273 P.2d 572], it was contended that since the evidence showed that the agent of the licensee hired the girls to solicit drinks, it was necessary to show that the licensee knew of or directed

the hiring before his license could be revoked. The court rejected this contention and stated that '[b]y virtue of the ownership of a liquor license such owner has a responsibility to see to it that the license is not used in violation of law.' (P. 187.) This principle has been repeatedly upheld by the California courts. [Citations of seven cases.] To hold the appellants [licensees] liable does not extend the principle of liability set forth in the Mantzoros case.''

In *Presto* v. *Alcoholic Beverage etc. Appeals Board*, 179 Cal.App.2d 262 [3 Cal.Rptr. 742], the department revoked a liquor license (on Counts I and II) for the reason the licensee permitted prostitutes, who were in the premises, to solicit acts of prostitution. The appeals board affirmed the decision. The superior court denied a petition for a writ of mandate. On appeal therein the court said, at page 265: ''The California cases hold that a licensee may be disciplined by the licensing authority for the unlawful acts of the employees while engaged in the conduct and operation of the business even though the employer did not authorize them and did not have actual knowledge of the activities.'' It was also said therein (p. 266): ''As to Counts I and II the appellants' bartender not only permitted acts and conduct charged, but aided and abetted them. Hence, since his knowledge and permission are imputed to the employer within the scope of the rule that a licensed employer may be disciplined to the extent of revocation of his license for the acts of his employees, it follows that the department was fully justified in revoking appellants' license on either of said Counts I or II.''

In *Mack* v. *Department of Alcoholic Beverage Control*, 178 Cal.App.2d 149 [2 Cal.Rptr. 629], wherein a liquor license was revoked for the reason the bartender-employee, on one day, permitted bookmaking activities on the premises, the court said, at page 154: ''It is therefore immaterial that appellants may have had no actual knowledge of the illegal gambling activities on their licensed premises. The evidence discloses unmistakable proof of the illegal activity of Mackie, their agent and employee. His knowledge became their knowledge and the responsibility for his acts became their responsibility, as far as their right to retain their license to sell intoxicants is concerned. Since they had knowledge of the illegal acts, the finding of the hearing officer that they 'caused, suffered and permitted' their premises to be so used, was amply supported by the evidence.''

As above indicated, the appeals board in rendering its opinion cited and relied upon New York cases. In the *Mack* case just referred to, the court, in discussing appellant's contention that the decision was not supported by the findings, said (p. 154): "In this regard, appellants cite several decisions from other jurisdictions which hold, in varying degrees, that a liquor license may not be suspended or revoked because of occasional or isolated acts of the licensee's employees. Whatever may be the rule in other jurisdictions, the California rule is settled that the single act of an employee of a licensee is sufficient to impose sanctions upon the licensee."

In *Garcia* v. *Martin*, 192 Cal.App.2d 786 [14 Cal.Rptr. 59], wherein the license was revoked on several counts of permitting women employees, who worked as waitresses or bartenders, to solicit persons on the premises to buy drinks for them, it was said: "It is also contended by appellant [licensee] that there is no evidence of knowledge on the part of the licensee that Brownie and JoJo [employees] were soliciting other persons to buy them drinks. It is apparent that the female bartenders had knowledge and this knowledge is imputed to appellant. 'The owner of a liquor license has the responsibility to see to it that the license is not used in violation of law and as a matter of general law the knowledge and acts of the employee or agent are imputable to the licensee.' (*Munro* v. *Alcoholic Beverage etc. Control Appeals Board*, 181 Cal.App.2d 162, 164 [5 Cal. Rptr. 527].)"

In the present case, the appeals board states, in effect, that it cannot be said that an act was "permitted" when no means or opportunity existed to prevent the act. In connection with that statement, the board cites *Stoumen* v. *Reilly*, 37 Cal.2d 713 [234 P.2d 969] and *Kershaw* v. *Department of Alcoholic Beverage Control*, 155 Cal.App.2d 544 [318 P.2d 494]. Those cases are distinguishable from the present case in that the questions therein pertained to the conduct of *patrons* and to the opportunity of the licensee to know of such conduct, whereas the present case pertained to conduct of the *bartender-employee* of the licensee.

In the present case it is clear that neither of the owners of the stock of the corporation-licensee was on the premises during the night shift on the occasion involved here. There was no evidence that either of such owners was on the premises during any night shift. The evidence was sufficient to support a finding by the department that the bartender was in charge of the premises during the night shift. Even though

the owners elected to remain absent from the premises during the evening hours and to delegate the management of the premises to the bartender during that time, they could not thereby render themselves immune from their responsibilities, under the license, on the asserted basis that they did not have actual knowledge of the acts of their employee. Under such a method of operating the business, it is obvious that the owners would never be in a position to observe the acts of their employee while he was representing them in the position of bartender. The licensee had the responsibility to see to it that the license was not used in violation of law. The employee of the licensee committed the illegal act. The appeals board erred in determining that the evidence was insufficient upon which to base a cause for discipline. The evidence was sufficient to support the findings and decision of the department.

The judgment is reversed, and the superior court is instructed to grant a peremptory writ of mandate directing the appeals board to vacate its order of reversal and to affirm the decision of the department.

Fourt, J., and Lillie, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 17, 1962. Schauer, J., Peters, J., and White, J., were of the opinion that the petition should be granted.