[Civ. No. 28318.   Second Dist., Div. One.   May 28, 1965.]

MANUEL J. BALLESTEROS et al., Plaintiffs and Respondents, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD et al., Defendants and Appellants.

Thomas C. Lynch, Attorney General, Warren H. Deering, Mark Lainer and Calvin W. Torrance, Deputy Attorneys General, for Defendants and Appellants.

Lloyd E. Somogyi for Plaintiffs and Respondents.

WOOD, P. J.—Petitioners' on-sale alcoholic beverage license was suspended by the Department of Alcoholic Beverage Control on the ground that petitioners permitted a person under the age of 21 years to enter and remain in their licensed premises without lawful business therein. The suspension was for 15 days with 10 days thereof stayed or suspended upon certain conditions. The decision of the department was

affirmed by the Alcoholic Beverage Control Appeals Board. Petitioners then petitioned the superior court for a writ of mandate directing the department and the board to vacate the department's decision. The court found that there was no substantial evidence to support the department's finding that petitioners permitted a person under the age of 21 years to enter and remain in the licensed premises without lawful business therein, and granted a peremptory writ of mandate directing the department and the board to vacate the department's decision. Appellants (the department and the board) appeal from the judgment granting the writ.

Appellants contend that there is substantial evidence to support the department's finding that petitioners permitted a person under the age of 21 years to enter and remain in the licensed premises without lawful business therein.

In an accusation filed by the department on March 14, 1961, it was alleged that petitioners were the holders of an on-sale license issued for a public premises (in San Luis Obispo) and did, on February 15, 1961, permit Wilma Jean Miller, a person under the age of 21 years, to enter and remain in the licensed premises without lawful business therein. (It was also alleged with regard to petitioners' previous record that the premises had been licensed on July 27, 1954, and there had been no violation thereat, but that petitioners had suffered a 10-day suspension of license at another premises in 1959, and that petitioner Lurelia Ballesteros had suffered a 15-day suspension of license at another premises in 1947.)

A hearing on the accusation was had before the department on April 27, 1961. Wilma Jean Miller, called as a witness on behalf of the department, testified in substance as follows: She was born on December 24, 1942, was married to Robert Miller on July 2, 1960, and resided with her husband in San Luis Obispo. At approximately 10 p.m. on February 15, 1961, she went with her husband and four of their friends to a barroom (the licensed premises) in San Luis Obispo. It was the first time she had gone there, and she went because she wanted to be with her husband and "the rest of the group, our friends." The Millers and their friends, who were members of a motorcycle club, were going to have a club meeting in the barroom. They had not been riding motorcycles that evening, and she was wearing a skirt and blouse, and the others were wearing sport clothes. As they entered the barroom, the four other persons were in front of her and her

husband. They went to a table at the north wall of the room, where she sat in a chair at the corner of the table, next to the north wall. Her husband and two of the friends "took orders from the rest of the group" and "walked over to the bar." (The bar was in the form of a semicircle at the south wall of the room.) There were five or six other persons at the bar, and the bartender appeared to be busy. About five minutes later her husband and the two friends returned to the table with drinks. Her husband gave her some Seven-Up, and then sat by her. A few minutes later, Officer Short came into the room, and "walked along the bar." Mr. Steelman (one of the friends) said something to the officer, and the officer came to the table. He (officer) said, "Is everyone here 21?" The other persons replied in the affirmative, but she did not say anything. The officer then checked identification cards of the other persons at the table (all of whom were apparently 21 years of age), and asked her, "Could I see yours?" She said, "I do not have any." She also testified that she had been in the barroom 10 minutes before Officer Short came there, and during that time she had been sitting in the same chair; she had not gone to the bar; the bartender had not come to the table; the bartender had been busy at the bar, when she had noticed him; and she had not "touched" the Seven-Up. She testified further that the lighting in the room was not sufficient to recognize persons or objects at a distance; she had a clear view of the bartender, but could not recognize all of his facial features; her husband was sitting in a position which partially obstructed her view of the bartender; and when the men had gone to the bar to order the drinks, they had obstructed the bartender's view of her.

Officer Short, called as a witness on behalf of the department, testified in substance as follows: He is a detective in the San Luis Obispo Police Department. At approximately 9 p.m. on February 15, 1961, while he was on duty, he was told "to check the different bars throughout the city for A. B. C. violations." At approximately 10:30 p.m., he entered petitioners' barroom, and saw "12 to 15 patrons" and also saw six or seven other patrons at two adjoining tables. It was approximately 6 to 7 feet from the place where the bartender was standing behind the bar to the two tables. There were "two young ladies" at those tables, and one of the ladies was sitting near the north wall. He "approached the table, knowing one of the persons [Mr. Steelman] there

personally," and said, "Is everyone 21?" He then asked the ladies for "identification." Mrs. Steelman produced an identification card which showed that she was "of legal age," and Mrs. Miller said she did not have identification. Then Mr. Miller said, "She's my wife. She's just drinking Seven-Up." He (officer) "smelled the clear liquid" which was in the glass on the table in front of Mrs. Miller, and "it smelled similar to Seven-Up." He then asked Mr. and Mrs. Miller to come over to another table in the room, and called the bartender over to ask if he checked identification. The bartender said that he had not served her, and then he returned to the bar. He (officer) questioned Mr. and Mrs. Miller about five minutes concerning their ages and marital status, and Mr. Miller went home and brought a marriage license and Mrs. Miller's driving license to the police station.

George Haus, called as a witness on behalf of petitioners, testified in substance as follows: He had been employed as a bartender at petitioners' barroom for three years, and was so employed on the evening of February 15, 1961. There were 18 bar stools and six tables in the room. He knew Mr. Steelman and Mr. Miller to be members of a motorcycle club. Some of the members of the club, including Steelman and Miller, had been in the barroom on six or eight prior occasions, and he (Haus) "had checked every time they came in" to determine whether they were 21 years of age. When the group came in that evening (February 15), he recognized Steelman and Miller. At that time the bar and tables "were full," and there were 26 or 27 persons in the room. The group went to a table, and Steelman, Miller and another fellow came to the bar. The three men stood in front of the bar, and there were patrons on the stools between the three men and the bar. The men ordered "beers for the gentlemen and a Seven-Up for the lady." He (Haus) asked, "Is everybody 21 at the table?", and they said, "Yes." He did not notice Mrs. Miller at that time because people at the bar obstructed his view of the table where she was sitting. He did not check the ages of the persons at the table because he knew they were members of the motorcycle club; he had checked the ages of club members previously; the women in the club usually ordered "plain Coke or Seven-Up"; and he took it for granted when the three men ordered a Seven-Up that it was for one of the members he had checked previously. He poured the drinks, and the men returned to the table. At this time Officer

Short entered the room, came to the bar, and asked him (witness) whether everyone was 21 years of age. He replied, "Yes, look around." Approximately five minutes elapsed between the time when the Millers and Steelmans entered the room and the time when Officer Short came there. During that time, Mrs. Miller did not come near the bar, and he did not go to the table. The first time he saw Mrs. Miller was when the officer had taken her to another table for questioning. He also testified that he could not go to the tables because the exit from the bar was blocked by patrons; that persons who wanted drinks would come to the bar for them.

Mr. Ballesteros (one of the petitioners) testified that it was about 22 feet from the north wall of the barroom to the south wall; the front of the bar is 6 feet from the south wall; and the illumination in the area of the table at the north wall where Mrs. Miller was sitting was not very good.

The department made a finding that petitioners permitted a person under the age of 21 years to enter and remain in the licensed premises without lawful business therein. At the trial, the court had before it the record of the proceedings before the department, and no additional evidence was received. The court found that there was no substantial evidence to support said finding of the department, and also found that "it is lawful business for a woman who has reached the age of majority to accompany her husband upon licensed premises, provided that she does not engage in the consumption of alcoholic beverages."

Appellants (department and appeals board) contend that there is substantial evidence to support the department's finding that petitioners permitted a person under the age of 21 years to enter and remain in the licensed premises without lawful business therein. They argue that petitioners are responsible for the conduct of their bartender, and that the bartender "permitted" the alleged violation through his "passive conduct." They also argue that the court erred in finding that it is lawful business for a woman who has reached the age of 18 years to accompany her husband upon licensed premises provided she does not engage in the consumption of alcoholic beverages.

In their brief, respondents (the licensees) concede that they are responsible for the conduct of their bartender (see *Harris* v. *Alcoholic Beverage etc. Appeals Board,* 197 Cal.App.2d 172, 180 [17 Cal.Rptr. 315] ; and *Marcucci* v. *Board of Equali-*

*zation,* 138 Cal.App.2d 605, 610 [292 P.2d 264]), but they argue that the bartender, by reason of the crowded conditions in the barroom, was unaware of the presence of Wilma Miller in the room, and did not knowingly permit her to enter and remain in the premises. They also argue that the court properly found that it was "lawful business" for Mrs. Miller to accompany her husband upon the premises.

Section 25665 of the Business and Professions Code provides: "Any licensee under an on-sale license issued for public premises . . . who permits a person under the age of 21 years to enter and remain in the licensed premises without lawful business therein is guilty of a misdemeanor . . . ."

Section 24200 of the Business and Professions Code provides, among other things, that a violation of penal provisions of law of California prohibiting or regulating the sale of alcoholic beverages constitutes a basis for the suspension of an alcoholic beverage license.

In the present case, Mrs. Miller, a person under the age of 21 years, entered and remained in the licensed premises for a period of at least ten minutes before the officer entered the premises. When she entered, she was with a group of persons, some of whom the bartender recognized' as being members of a motorcycle club. He had served drinks to members of the club on previous occasions and had checked to determine whether they were 21 years of age on each of such occasions. After Mrs. Miller and the group of persons had gone to a table in the room, some of the persons came to the bar and ordered several "beers" and a "Seven-Up." The bartender served the drinks to the persons without going to the table and without determining that the persons at the table were 21 years of age. He did not check their ages because he assumed they were club members whose ages he had checked before. He did not go to the table (and apparently did not go to any tables in the room that evening) because the room was crowded and the exit from the bar was blocked. He did not notice Mrs. Miller's presence in the room because his view of the table was obstructed when the persons with her ordered the drinks, but Mrs. Miller had clear view of him from the place where she was sitting.

In *Givens* v. *Department of Alcoholic Beverage Control,* 176 Cal.App.2d 529, 534 [1 Cal.Rptr. 446], it is said: "[A]n on-sale licensee has an affirmative duty to maintain properly operated premises." (See also *Fromberg* v. *Department of Alcoholic Beverage Control,* 169 Cal.App.2d 230, 234

[337 P.2d 123].) ██ In the present case it is apparent that the bartender, who was the only one in charge of the barroom and was very busy selling beverages to the many patrons who were crowding around the bar, was inactive or passive with respect to his affirmative duty to ascertain the age of Mrs. Miller. Such passive conduct on his part amounts to "permitting" Mrs. Miller to be present in the barroom. In *Mundell* v. *Department of Alcoholic Beverage Control,* 211 Cal.App.2d 231, 237 [27 Cal.Rptr. 62], where a bartender made no effort to prevent continuous unlawful acts in the barroom (agitating and challenging patrons), it was said: "Such passive conduct on the part of the bartender amounts to 'permitting' the conduct to occur." (See also *Givens* v. *Department of Alcoholic Beverage Control, supra,* p. 534; *Swegle* v. *State Board of Equalization,* 125 Cal.App.2d 432, 438 [270 P.2d 518].)

██ In the *Mundell* case, *supra,* it was also said (p. 233): "The Department of Alcoholic Beverage Control is a constitutional agency. [Citation.] It exercises limited judicial functions and its decision must be sustained if it has committed no error of law and if there is substantial evidence to support its findings of fact. [Citations.] ██ The courts, both trial and appellate, are bound in cases of this kind by the substantial evidence rule, and may not reweigh the evidence or pass on the credibility of the witnesses, or resolve the conflicting testimony contrary to the Department's findings. All legitimate and reasonable inferences must be indulged in support of the Department's decision. [Citations.]"

██ There was sufficient evidence to support the finding of the department that petitioners permitted a person under the age of 21 years to enter and remain in the licensed premises.

██ Petitioners assert further to the effect it was established that Mrs. Miller, who was 18 years of age and married, was in the premises on lawful business in that she was accompanying her husband who was in the premises; that since she was there with her husband, she was within the exception stated in said section 25665 of the Business and Professions Code, namely, that the section was not applicable to a person under 21 years of age who was in the premises on lawful business. With respect to the exception regarding persons having "lawful business" on such premises, the appellants (department and appeals board) assert that the department, for several years, has interpreted that phrase

as referring to persons who enter the premises for the purpose of conducting *their* business therein, such as persons delivering telegrams or supplies to the premises. In the present case the husband was in the barroom merely as a patron of the alcoholic beverage licensees, and it cannot properly be concluded that the wife's accompanying him there was a matter of "lawful business" or any business within the meaning of section 25665 of the Business and Professions Code.

The evidence before the department was sufficient to support its findings.

The judgment is reversed.

Fourt, J., and Lillie, J., concurred.